T.C. Memo. 2009-214


UNITED STATES TAX COURT


MEDICAL PRACTICE SOLUTIONS, LLC, CAROLYN BRITTON, SOLE MEMBER,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14664-08L.                    Filed September 16, 2009.


        A single-member LLC failed to pay employment taxes
for several periods.  Notices of lien and of intent to
levy were sent to P, the sole member of the LLC.  After
hearing under I.R.C. sec. 6330, notices of
determination sustaining the lien and proposed levy
were sent to "MEDICAL PRACTICE SOLUTIONS LLC
CAROLYN BRITTON SOLE MBR", pursuant to sec.
301.7701-3(b), Proced. & Admin. Regs. (check-the-box
regulations).  P appealed those determinations to this
Court.  P and R jointly submitted the case under Rule
122.  R moved to reopen the record to admit Forms 4340
to show, for purposes of I.R.C. sec. 6330(c)(1), that
requirements of applicable law and procedure had been
met.  P opposed R's motion.

        <u>Held</u>:  R abused his discretion in determining to
proceed with collection without making the requisite
verification under I.R.C. sec. 6330(c)(1) that all
legal and procedural requirements had been met.

        *Held*, *further*, that R's motion to reopen the
record to admit Forms 4340 into evidence is denied.


        Carolyn Britton, pro se.

        Louise R. Forbes, for respondent.



                    MEMORANDUM OPINION


        GUSTAFSON, Judge:  This case is an appeal under
section 6330(d)[1] by petitioner Medical Practice Solutions, LLC
(Medical Practice), by its sole member Carolyn Britton.[2]
Ms. Britton seeks our review of the determination by the Internal
Revenue Service (IRS) to sustain the filing of a notice of
Federal tax lien and to uphold a proposed levy against
Ms. Britton in order to collect from her the employment tax
liabilities of Medical Practice for the three taxable quarters
ending September 30, 2006, December 31, 2006, and June 30, 2007.
Ms. Britton filed an earlier case with respect to different
quarters, raising the same substantive issue underlying this

---

[1]Except as otherwise noted, all section references are to
the Internal Revenue Code (26 U.S.C.), and all Rule references
are to the Tax Court Rules of Practice and Procedure.

[2]See Med. Practice Solutions, LLC, Carolyn Britton, Sole
Member v. Commissioner, 132 T.C. ___, ___ (2009) (slip op. at 5)
("For purposes of this proceeding, under those regulations [sec.
301.7701-3(a) and (b)(1), Proced. & Admin. Regs.], the LLC and
its sole member are a single taxpayer or person"), on appeal (1st
Cir., July 13, 2009).

case, which this Court recently decided against her.  See Med.
Practice Solutions, LLC, Carolyn Britton, Sole Member v.
Commissioner, 132 T.C. ___ (2009), on appeal (1st Cir., July 13,
2009).  Fifteen days before we decided that case, this case was
submitted fully stipulated pursuant to Rule 122, reflecting the
parties' agreement that the case can be decided without a trial.[3]

## Background

At the time Ms. Britton filed her petition, she resided in
Massachusetts.

### Medical Practice's Nonpayment of Self-Reported Payroll Taxes

Ms. Britton was the sole member of Medical Practice for the
calendar quarters ending September 30, 2006, December 31, 2006,
and June 30, 2007.  Medical Practice timely filed its Forms 941,
Employer's Quarterly Federal Tax Return, for each of those
quarters.  However, Medical Practice left unpaid some of the tax
liabilities reported on each of those returns.

### Collection Procedures

On December 10, 2007, the IRS issued to Ms. Britton (i.e.,
in her name only) a Final Notice of Intent to Levy and Notice of
Your Right to a Hearing for the two quarters ending December 31,

___

[3]The jointly stipulated record consists of documents
originally attached to respondent's motion for summary judgment--
i.e., as Exhibits A through I, and as Exhibits A through G to the
Declaration of the IRS settlement officer--and documents marked
as Exhibits J, K, and L, which Ms. Britton proffered at the
hearing of March 16, 2009.  See the Court's orders of April 17
and July 10, 2009.

2006, and June 30, 2007.[4]  On December 18, 2007, the IRS issued

to Ms. Britton (again, in her name only) a Notice of Federal Tax

Lien Filing and Your Right to a Hearing Under IRC 6320 for the

three quarters ending September 30, 2006, December 31, 2006, and

June 30, 2007.  Ms. Britton timely requested a collection due

process (CDP) hearing with respect to both collection notices by

submitting to the IRS on January 9, 2008, a Form 12153, Request

for a Collection Due Process or Equivalent Hearing.[5]  Ms. Britton

did not propose a collection alternative on her Form 12153, but

rather requested withdrawal of the lien and requested penalty

abatement because the "[c]ollection action is against the wrong

tax payer; the IRS check the box rules are invalid".

On February 19, 2008, an IRS appeals officer[6] sent a letter

to Ms. Britton scheduling her CDP conference for March 4, 2008.

On March 3, 2008, Ms. Britton's attorney-in-fact, requested a

---

[4]The record does not show why the notice of intent to levy covered only two periods, while the notice of Federal tax lien covered three periods.

[5]The Form 12153 bore Ms. Britton's name (not the name of Medical Practice) and was signed by Ms. Britton's husband and attorney-in-fact, Randy Britton.

[6]The employee who conducted the CDP hearing is identified in the hearing record as a "settlement officer".  Sections 6330(c)(1) and (c)(3) refer to the person who conducts the CDP hearing as an "appeals officer"; but section 6330(b)(3) refers to the person as "an officer or employee", and sections 6330(b)(1) and (d)(2) refer more generally to the "Internal Revenue Service Office of Appeals".  We use the statutory term "appeals officer" throughout this opinion.

face-to-face hearing.  To accommodate this request the appeals officer rescheduled the CDP hearing to March 6, 2008. On March 6, 2008, the CDP hearing was held between Ms. Britton's attorney-in-fact and the appeals officer.  Ms. Britton's attorney-in-fact disputed whether the notice of lien was properly filed under section 6323 because it listed Ms. Britton and her personal address, but the notice required by section 6320 was sent to Medical Practice's business address.  The appeals officer advised Ms. Britton's attorney-in-fact that he would look into the lien issue.  Ms. Britton's attorney-in-fact inquired about an installment agreement, but he did not propose one.  As a result, the appeals officer advised Ms. Britton's attorney-in-fact that Ms. Britton had until April 9, 2008, to provide proof of Medical Practice's compliance with filing and payment obligations and to propose any collection alternatives for consideration.

Following the CDP hearing, the appeals officer researched the lien issue and determined that the lien had been properly filed against Ms. Britton because Medical Practice is a disregarded entity.  During the course of the appeals officer's research he discovered that Ms. Britton had petitioned this Court with respect to a notice of determination for prior tax periods of Medical Practice.  Those other periods were still under the jurisdiction of the IRS's Office of Chief Counsel and this Court. As a result, the appeals officer phoned Ms. Britton's attorney-

in-fact to inform him that the IRS's Office of Appeals could not consider any collection alternatives because of the pending CDP appeal with respect to the other periods. Furthermore, the appeals officer determined in his final review of Ms. Britton's case on April 22, 2008, that even apart from the pending CDP appeal, Ms. Britton would not be eligible for any collection alternatives because Medical Practice was not current with Federal tax deposit requirements.

On May 9, 2008, the Office of Appeals issued to Ms. Britton two separate Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330: one sustaining the filing of the notice of Federal tax lien for tax periods ending September 30, 2006, December 31, 2006, and June 30, 2007, and one sustaining the proposed levy to collect the unpaid taxes for tax periods ending December 31, 2006, and June 30, 2007. In the attachments to the notices, the appeals officer stated, "With the best information available, the requirements of various applicable law or administrative procedures have been met". However, the attachments to the notices did not describe the "best information available" that the appeals officer used to verify that the requirements had been met. The attachments do state that "[t]ranscripts of the taxpayer's accounts show the Service Center issued [notice and demand]" for payment. However,

the attachments do not indicate that transcripts were also consulted to verify that proper assessments had been made.

The Commencement of This Case

On June 16, 2008, Ms. Britton timely petitioned this Court to review the notices of determination.  The petition alleges seven points of error, as follows:

a.  The IRS refused to consider a Settlement Agreement.

b.  The IRS wants to levy against Carolyn Britton without first assessing her or making a demand for payment.

c.  The IRS has improperly filed tax liens against Carolyn Britton personally without following proper procedure.

d.  The IRS check the box rules, under which the IRS justifies b. and c. above, are invalid.

e.  Carolyn Britton is not personally liable for any employment taxes; Medical Practice Solutions, LLC is liable.

f.  The IRS notices were sent to the wrong taxpayer at the wrong address.

g.  Carolyn Britton's home should be released from the tax liens because she was not assessed for any taxes, and there is no equity in the home for the junior tax liens to attach.

Thus, Ms. Britton's contentions in her petition involve three issues:  (1) whether the appeals officer erred in refusing to consider a collection alternative (issues (a) and (g)[7]),

---

[7]The petition's contention as to equity in Ms. Britton's home (apparently asserted to show why a collection alternative should have been adopted) was raised neither in her Form 12153 nor at the CDP hearing, so we do not consider it here.  See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Magana v.
(continued...)

(2) whether Ms. Britton is personally liable for the tax liabilities of Medical Practice (issues (d)-(g)), and (3) whether the appeals officer obtained the requisite verification that "applicable law or administrative procedure" had been satisfied under section 6330(c)(1) (issues (b) and (c)).[8]  On October 14, 2008, the Court gave notice that this case would be tried March 16, 2009.

Respondent's Motion for Summary Judgment

On January 16, 2009, respondent moved for summary judgment. To support the motion, respondent relied on a declaration of the appeals officer with seven exhibits:  Exhibits A and B (the two notices of determination at issue here), Exhibits C through F (about which the declaration states, "My determination was made after reviewing the following documents"),[9] and Exhibit G (his

---

[7](...continued)
Commissioner, 118 T.C. 488, 493 (2002).

[8]We construe broadly the petition of Ms. Britton as a pro se litigant.  See Rule 31(d); Swope v. Commissioner, T.C. Memo. 1990-82.  The references to defects in the assessment and in the issuance of notices and to lack of "proper procedure" were sufficient to plead a dispute as to whether verification was obtained as required by section 6330(c)(1).

[9]Exhibit C is the Final Notice of Intent to Levy which was issued to Ms. Britton on December 10, 2007, for the tax periods ending December 2006 and June 2007; Exhibit D is the notice of Federal tax lien issued to Ms. Britton on December 18, 2007, for the tax periods ending September 2006, December 2006, and June 2007; Exhibit E is Ms. Britton's Form 12153 that she submitted to the Office of Appeals on January 9, 2008, requesting a CDP hearing; and Exhibit F is a letter dated February 19, 2008, from
(continued...)

case activity record).  Respondent's motion also relied on nine additional documents marked as Exhibits A through I, which were not authenticated by the appeals officer as having been reviewed during the CDP hearing.

Ms. Britton was ordered to respond to the motion for summary judgment but did not do so even after being granted an extension of time.

The Court later denied respondent's motion for summary judgment as moot, in view of the parties' submission of the case under Rule 122, as explained below.  (If the motion had instead been considered on its merits, it would have been denied for the same reasons that decision is rendered here for Ms. Britton.)

Submission of the Case

On March 16, 2009, this case was called at the Court's session in Boston, Massachusetts, and Ms. Britton appeared pro se.  Ms. Britton expressed a desire for more time to prepare her case.  The Court advised Ms. Britton that, consistent with the notice the Court had issued 5 months earlier, the case would proceed to trial unless the case could be fully stipulated. Ms. Britton agreed that the case could be submitted without a trial.  Ms. Britton and respondent then jointly moved under Rule

---

[9](...continued)
the appeals officer to Ms. Britton acknowledging receipt of Ms. Britton's Form 12153, explaining the CDP process, and scheduling Ms. Britton's CDP hearing for March 4, 2008.  No transcripts for any periods were attached to the declaration.

122 that the case be decided on the basis of the exhibits attached to respondent's motion for summary judgment plus three additional exhibits--Exhibits J through L--proffered by Ms. Britton.  The Court granted the joint motion.

As a result, neither party offered any additional evidence. In particular, respondent did not offer testimony of the appeals officer explaining his verification under section 6330(c)(1), nor any other evidence of the information that he consulted during the CDP hearing.  As we will show below, respondent has since then conceded "that there is no evidence in the record as it exists to verify that the assessments and notice and demands were properly made".

Post-Trial Filings

The stipulated documents include an account transcript for Medical Practice (generated after the agency-level CDP process and during this litigation) for one of the three taxable quarters at issue--i.e., the quarter ending December 31, 2006--but the stipulated documents do not include account transcripts for the other two taxable quarters, ending September 30, 2006, and June 30, 2007.[10]  Accordingly, Ms. Britton stated in her opening

---

[10]The stipulated documents also include several transcripts for Medical Practice (again, generated after the CDP hearing) that pertain to five taxable quarters other than those that were at issue in that hearing and that are at issue in this case-- i.e., quarters ending June 30, 2006, March 31, 2007, September 30, 2007, December 31, 2007, and March 31, 2008.

posttrial brief filed April 6, 2009, that "there is an inadequate record for review, and there are irregularities in the assessment process."

On May 29, 2009, respondent filed a motion to reopen the record for the purpose of admitting into evidence Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for Medical Practice's tax quarters ending September 30, 2006, December 31, 2006, and June 30, 2007, the three quarters in suit. The Forms 4340 were dated May 28, 2009 (a year after the Office of Appeals issued the notices of determination). In this motion respondent acknowledged "that there is no evidence in the record as it exists to verify that the assessments and notice and demands were properly made", but respondent argued that remand would be unnecessary if the Forms 4340 were admitted into evidence to show the assessments were properly made and notices properly sent. Ms. Britton opposed respondent's motion to reopen the record.

Discussion

I. Collection Review Procedures in the Code

    A. Agency-Level Action

If a taxpayer fails to pay any Federal income tax liability after notice and demand, chapter 64 of the Code provides two means by which the IRS can collect the tax: First, section 6321 imposes a lien in favor of the United States on all the property

of the delinquent taxpayer, and section 6323(f) authorizes the IRS to file notice of that lien. Second, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.

However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Liens" and "Due Process for Collections". The IRS must comply with those provisions after filing a tax lien, and before proceeding with a levy. Within five business days after filing a tax lien, the IRS must provide written notice of that filing to the taxpayer. Sec. 6320(a). After receiving such a notice, the taxpayer may request an administrative hearing before the Office of Appeals.[11] Sec. 6320(b)(1). Similarly, before proceeding with a levy, the IRS must issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before the Office of Appeals. Sec. 6330(a) and (b)(1). Administrative review is carried out by way of a hearing before the Office of Appeals under section 6330(b) and (c); and if the taxpayer is dissatisfied with the outcome there, it can appeal that

---

[11]To the extent practicable, a CDP hearing concerning a lien under section 6320 is to be held in conjunction with a CDP hearing concerning a levy under section 6330, and the conduct of the lien hearing is to be in accordance with the relevant provisions of section 6330. See sec. 6320(b)(4), (c).

determination to this Court under section 6330(d), as Ms. Britton has done.

The pertinent procedures for the agency-level CDP hearing are set forth in section 6330(c). First, the appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1) (discussed below in Part II.A). Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy," including challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). After considering those issues, the Office of Appeals issues its notice of determination. See sec. 6330(c)(3).

B. <u>Judicial Review</u>

If the taxpayer is not satisfied with the determination of the Office of Appeals, the taxpayer may "appeal such determination to the Tax Court". Sec. 6330(d)(1). Except where underlying liability is at issue, we review the determination of the Office of Appeals for abuse of discretion, <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000)--that is, whether the

determination was arbitrary, capricious, or without sound basis in fact or law, see <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000).[12]

II. <u>Respondent's Lien and Proposed Levy Cannot Be Sustained</u>

Although Ms. Britton's case is very weak both as to her now-obvious liability for the taxes at issue[13] and the apparent lack of merit in her contentions about collection alternatives,[14] we

---

[12]This Court has held that an appeal pursuant to section 6330 is resolved by a de novo trial, <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), but the Court of Appeals for the First Circuit follows the "record rule". That is, subject to "limited exceptions", "the administrative record rule * * * applies to a taxpayer's CDP hearing appeal to the Tax Court", so that the Tax Court "could not consider evidence outside of the administrative record in ruling on a taxpayer's CDP hearing appeal", and "judicial review normally should be limited to the information that was before the IRS when making the challenged rulings." <u>Murphy v. Commissioner</u>, 469 F.3d 27, 31 (1st Cir. 2006), affg. 125 T.C. 301 (2005). In this case an appeal would lie to the U.S. Court of Appeals for the First Circuit, so we follow its precedent. See <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). However, since this case is submitted on a stipulated record under Rule 122, the question of the scope of the record does not affect the outcome.

[13]See <u>Med. Practice Solutions, LLC, Carolyn Britton, Sole Member v. Commissioner</u>, 132 T.C. at ___ (slip op. at 5) (holding --against this same petitioner--that when a single-member LLC fails to pay its taxes, collection may proceed against the single member as if "the LLC and its sole member are a single taxpayer or person"). Our decision aligned itself with uniform authority, including the judgment of two courts of appeals. See <u>McNamee v. Dept. of the Treasury</u>, 488 F.3d 100 (2d Cir. 2007); <u>Littriello v. United States</u>, 484 F.3d 372 (6th Cir. 2007).

[14]The Office of Appeals does not abuse its discretion to
                                                    (continued...)

do not reach those issues.  Rather, the stipulated record does not support respondent's case on a logically prior issue, the first issue we confront under section 6330(c)--viz., whether the Office of Appeals "obtain[ed] verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."  Sec. 6330(c)(1), (c)(3)(A).

A.    The Hearing Record Does Not Show Verification as Required By Section 6330(c)(1).

Independent of any issue raised or argument made by the taxpayer, section 6330(c)(1) requires the appeals officer conducting a CDP hearing to "verify that the requirements of any applicable law or administrative procedure have been met."  Hoyle v. Commissioner, 131 T.C. ___ , ___ (2008) (slip op. at 5).  In the case of a self-reported tax liability, the basic legal requirements for which the appeals officer must obtain verification in order to sustain the filing of a notice of Federal tax lien or to determine to proceed with a levy are:

- the IRS's timely assessment of the liability, secs. 6201(a)(1), 6501(a);

- the taxpayer's failure to pay the liability, secs. 6321, 6331(a);

---

[14](...continued) reject a collection alternative where (as appears, from the record before us, to be the case here) the taxpayer did not propose a specific alternative, see Cavazos v. Commissioner, T.C. Memo. 2008-257, or the taxpayer did not show compliance with current tax obligations, see Giamelli v. Commissioner, 129 T.C. at 111-112.

- the giving to the taxpayer of notice and demand for payment of the liability, sec. 6303, before any levy, sec. 6331(a); and

- the giving to the taxpayer of notice of intent to levy, secs. 6330(a)(1), 6331(d)(1), or notice of the filing of a Federal tax lien, sec. 6320(a)(1), and of the taxpayer's right to a hearing, secs. 6320(a)(3)(B), 6330(a)(3)(B), 6331(d)(4)(C).

If those requirements have been met, then the appeals officer can proceed to consider the other collection and liability issues. But if those basic requirements have not been met, then collection cannot proceed, and the appeals officer cannot sustain the proposed collection action. In view of the mandatory nature of the verification requirement, "this Court will review the Appeals officer's verification under section 6330(c)(1) without regard to whether the taxpayer raised it at the Appeals hearing", Hoyle v. Commissioner, supra at ___ (slip op. at 11), as long as the taxpayer has adequately raised the issue in her appeal, as Ms. Britton has done.[15]

Where the taxpayer in a lien or levy case before this Court contends that the appeals officer failed to obtain the requisite verification under section 6330(c)(1), the taxpayer has the burden of going forward with a prima facie case and the burden of

---

[15]The issue of verification under section 6330(c)(1) was raised in the petition, see supra note 8, and in Ms. Britton's posttrial brief when she explicitly mentioned "verification" and complained that "there is an inadequate record for review."

proof on that contention.[16]  We hold that Ms. Britton carried that burden because of silence or ambiguity in the appeals officer's statement:

An attachment to the notice of determination states, "With the best information available, the requirements of various applicable law or administrative procedures have been met".  This statement is ambiguous at best in two respects:  First, the reference to "the best information available" might mean that adequate information was <u>not</u> available and that he was settling for inadequate information.  Second, it is unclear what he considered when he verified (in his phrase) "the requirements of <u>various</u> applicable law or administrative procedures" (emphasis added) and how that compares to "the requirements of <u>any</u> applicable law or administrative procedure", as section 6330(c)(1) requires.

The record does show verification of the fourth requirement listed above, i.e., issuance of notice of intent to levy and

---

[16]In <u>Coleman v. Commissioner</u>, 94 T.C. 82, 89-90 (1990), a deficiency case, we held:  "To establish this defense [expiration of the statute of limitation], petitioners must make a prima facie case establishing the filing of their returns, the expiration of the statutory period and receipt or mailing of the notice after the running of the period. * * * Where the party pleading the defense makes such a showing, the burden of going forward with the evidence shifts to respondent who must then introduce evidence to show that the bar of the statute is not applicable."  A similar analysis should apply in a CDP case.  See <u>Butti v. Commissioner</u>, T.C. Memo. 2008-82 (a CDP case involving a verification issue, citing <u>Coleman</u>).

notice of the filing of a Federal tax lien.[17]  As for
verification of the second and third requirements, i.e., failure
to pay the liability, and notice and demand for payment, the
attachments to the notices of determination issued at the
conclusion of the CDP hearing state that "[t]ranscripts of the
taxpayer's accounts show the Service Center issued these notices;
at the time of the Notice of Intent to Levy the obligation
remained unpaid".  However, the absence of transcripts in the
stipulated documents from the hearing record, along with the
presence of the <u>wrong</u> transcripts in our stipulated Court record,
leaves us unable to review his verification (and unable, for
example, to eliminate the possibility that he consulted the wrong
transcripts and thus failed to verify notice and demand of an
unpaid balance for the quarters actually at issue).  As to the
first basic requirement--i.e., the fact and timeliness of the
assessments--the notices of determination fail to explicitly
allege, and nothing in the hearing record shows, verification for
any of the three quarters.[18]  The attachments to the notices of

---

[17]The notice of intent to levy and notice of Federal tax
lien filing appear in the record as Exhibits C and D to the
declaration of the appeals officer, in which he stated that his
"determination was made after reviewing" those documents.

[18]As is noted above, respondent's summary judgment motion
papers and the stipulated record included only a <u>post</u>-hearing
transcript from only one of the three quarters.  There is no
transcript in the record for the quarters ending September 30,
2006, or June 30, 2007.  The only correct account transcript in
(continued...)

determination do not state that the assessments were verified, and the record does not include information from which a verification could be made.

As is noted above, the attachments to the notices of determination do indicate that the appeals officer consulted transcripts.[19]  We have seen cases in which appeals officers have relied on transcripts to verify assessments, and we have said that it is reasonable for them to do so.  See Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002) (appeals officer does not abuse his discretion when, to obtain the verification required by section 6330(c)(1), he relies on an IRS transcript); see also Craig v. Commissioner, 119 T.C. 252, 261-262 (2002) (section 6330(c)(1) verification does not require the appeals officer to rely on any particular document for verification).

However, the attachments state that the appeals officer consulted transcripts to verify notice and demand to pay unpaid balances; they do not state that he verified the fact and timeliness of assessments by consulting transcripts or otherwise.

---

[18](...continued)
the record is one for the quarter ending December 31, 2006, but it could not have been used by the appeals officer to obtain verification because it was generated after the Office of Appeals had issued the notices of determination.

[19]There is also an entry on the case activity record that states the appeals officer "reviewed inte[rn]al data bases[]", but nowhere in that entry or elsewhere on the case activity record does he state whether such a review was used to verify that applicable laws and procedures had been met.

To cure this apparent gap in the hearing record, respondent could have offered evidence such as the appeals officer's testimony as to what he obtained and what he verified. Even the "record rule" admits an exception and allows additional evidence "where there is a 'failure to explain administrative action [so] as to frustrate effective judicial review", Murphy v. Commissioner, 469 F.3d at 31 (quoting Camp v. Pitts, 411 U.S. 138, 142-143 (1973)). But respondent offered no such evidence. Rather, respondent admits "that there is no evidence in the record as it exists to verify that the assessments and notice and demands were properly made".

B. The Record Will Not Be Reopened to Admit the Missing Information.

Respondent would cure the defects in the appeals officer's verification by having the Court reopen the court record to admit Forms 4340. We assume that the Forms 4340 that respondent belatedly presents do indeed include information that, if it had been consulted by the appeals officer, would have shown him "that the requirements of any applicable law or administrative procedure have been met"--in particular, that the assessments were timely made, that the IRS did issue notices and demands for payment, and that the liabilities were not fully paid at the time the notices of determination were issued. Reopening the record to receive additional evidence is a matter within the discretion of the trial court, Zenith Radio Corp. v. Hazeltine Research,

Inc., 401 U.S. 321, 331 (1971); Butler v. Commissioner, 114 T.C. 276, 286-287 (2000); but in this case we will not exercise our discretion to admit the Forms 4340 that could have been introduced before the record closed but were not.

First, the evidence respondent now proffers would not change the outcome of the case. As we held in Butler v. Commissioner, supra at 287, the Court "will not grant a motion to reopen the record unless * * * the evidence is material to the issues involved, and the evidence probably would change the outcome of the case." Strictly speaking, the determinative issue here is not whether legal and procedural requirements were met (an issue for which the Forms 4340 would be probative); rather, the issue is whether the Office of Appeals, before it determined in May 2008 to proceed with collection, verified that legal and procedural requirements were met. Forms 4340 generated after the CDP hearing could properly be offered to explain information that the appeals officer did obtain in the hearing and simply failed to put into the record; but in light of the ambiguity in the settlement officer's statements and the absence of any other evidence to show that he did in fact obtain verification, the Forms 4340 respondent now offers would not aid us in resolving the issue before us. The Forms 4340 would only show information that (as far as we can tell) the settlement officer failed to obtain in making his verification.

Second, opening the record in these circumstances would be unfair. Ms. Britton asked to be given more time to prepare her case, but the Court denied her request and ordered that the case must proceed to trial. Having thus held Ms. Britton to a do-or-die, now-or-never schedule, the Court should not allow respondent to take advantage of his hindsight and to submit evidence that he wishes he had submitted at trial.

For these reasons, we decline to allow the Forms 4340 to be admitted into evidence. Respondent's motion to reopen the record will be denied.

C.    The Case Will Be Remanded.

In her brief the pro se petitioner requests that we remand this case to the Office of Appeals, so that the appeals officer "can supplement the record with whatever he used to complete his verification". We do have the discretion to remand a case to the Office of Appeals for consideration of a matter that was inadequately considered in the CDP hearing, and there are circumstances in which a remand is appropriate to clarify a verification under section 6330(c)(1). See Hoyle v. Commissioner, 131 T.C. ___ (2008). In view of petitioner's request, we will order a remand.[20]

---

[20]By ordering a remand, we do not mean to imply that verification of compliance with applicable law is optional for the appeals officer. On the contrary, it is plainly the intention of Congress that such verification precede a collection

(continued...)

To reflect the foregoing,

<u>An appropriate order will
be issued</u>.

---

[20](...continued)
determination in every case.  The appeals officer certainly may
not give verification short shrift in his CDP hearings and then,
in the fraction of cases that eventually come before this Court,
count on a remand to give him a second chance to fulfill that
statutory obligation.  Our review of the appeals officer's
verification under section 6330(c)(1) sometimes results in a
finding, based on the evidence, that a given requirement of law
has not been met and that an assessment is invalid.  See, e.g.,
<u>Freije v. Commissioner</u>, 125 T.C. 14, 34-36 (2005).  In
appropriate circumstances, a lack of evidence in the record
(e.g., evidence of a timely assessment) might result not in a
remand but in an affirmative finding, based on a failure of
proof, that the requirement has not been met.