T.C. Memo. 2010-98

UNITED STATES TAX COURT

MEDICAL PRACTICE SOLUTIONS, LLC, CAROLYN BRITTON, SOLE MEMBER,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 14664-08L.                    Filed May 4, 2010.

Carolyn Britton, pro se.

Nina P. Ching, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

GUSTAFSON, Judge:  This case is an appeal under

section 6330(d)[1] by petitioner Medical Practice Solutions, LLC

_____

[*]This opinion supplements Med. Practice Solutions, LLC v.
Commissioner, T.C. Memo. 2009-214.

[1]Except as otherwise noted, all section references are to
                                        (continued...)

(the LLC), brought by its sole member Carolyn Britton.
Ms. Britton seeks our review of the determination by the Internal Revenue Service (IRS) to sustain the filing of a notice of Federal tax lien and to uphold a proposed levy against Ms. Britton in order to collect from her the employment tax liabilities of the LLC for the three taxable quarters ending September 30, 2006, December 31, 2006, and June 30, 2007. Her arguments here include some that we rejected in her prior suit, Med. Practice Solutions, LLC, Carolyn Britton, Sole Member v. Commissioner, 132 T.C. 125, 126 (2009), on appeal (1st Cir., July 13, 2009) (hereinafter, Medical Practice I). After our remand,[2] the case is before us on the parties' cross-motions for summary judgment. We will deny Ms. Britton's motion and grant respondent's motion.

---

[1](...continued)
the Internal Revenue Code (Code, 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The parties originally submitted this case as fully stipulated pursuant to Rule 122. We decided that respondent's Office of Appeals had abused its discretion in determining to proceed with collection without verifying that all legal and procedural requirements had been met (as section 6330(c)(1) requires), and we remanded the case to the Office of Appeals to clarify the record as to that verification. See Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214. After conducting a supplemental hearing, the Office of Appeals issued a supplemental notice of determination stating that a verification had been made. The parties have now briefed that verification issue and have renewed their arguments about the additional issues in the case.

Background

At the time Ms. Britton filed her petition, she resided in Massachusetts.

Assessment and non-payment of self-reported payroll taxes

Ms. Britton was the sole member[3] of the LLC for the calendar quarters ending September 30, 2006, December 31, 2006, and June 30, 2007. She does not allege that she elected to treat the LLC as a corporation (and she previously stipulated, Medical Practice I, 132 T.C. at 126, that she did not elect to treat the LLC as a corporation). Ms. Britton timely filed the LLC's Forms 941, Employer's Quarterly Federal Tax Return, for each of those quarters. As in Medical Practice I, id., those returns named not Ms. Britton personally but "MEDICAL PRACTICE SOLUTIONS LLC" as the taxpayer. The returns gave the LLC's employer identification number (EIN) and its business address in Beverly, Massachusetts. Ms. Britton signed the first two of those returns, and

_____

[3]Ms. Britton does not deny that she was the sole member of the LLC. On the contrary, she stipulated the fact in Medical Practice I, 132 T.C. at 126; and on the signature block on her opposition in this case she identifies herself as "Carolyn Britton, Sole Member" (as she has done in her filings in this case since March 4, 2009). However, Ms. Britton submitted with her opposition and cross-motion the declaration of her representative and husband, Randy Britton, who states that he did not ever tell the appeals officer how many members there were. Nonetheless, the settlement officer concluded in the first CDP hearing that Ms. Britton was the sole member; the notices of determination identified her as "SOLE MBR"; and Ms. Britton does not claim that she disputed the settlement officer's conclusion at any time in the original or supplemental hearing.

Ms. Britton's husband Randy Britton signed the third as "Power of Attorney".  As in Medical Practice I, id., the LLC left unpaid some of the tax liabilities reported on each of those returns.  The IRS duly assessed the liabilities under the LLC's name and EIN.[4]  On various dates in 2007 the IRS gave Ms. Britton notice of the balances due for the three quarters.

IRS collection activity

On December 10, 2007, the IRS issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for the two quarters ending December 31, 2006, and June 30, 2007;[5] and on December 18, 2007, the IRS issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for the three quarters ending September 30, 2006, December 31, 2006, and June 30, 2007.  As in Medical Practice I, id., the notices were issued not to the LLC but to Ms. Britton.  However, the notices were sent not to Ms. Britton's home address in Lexington but to the Beverly address; but Ms. Britton did receive the notices.  The notices referred to the LLC's EIN and identified the liabilities

_____

[4]Ms. Britton contends that the record does not show assessments against the LLC, but the self-authenticating Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, which the appeals officer provided to Ms. Britton during the supplemental hearing, plainly show the assessments.

[5]The record does not show why the notice of intent to levy covered only two periods, while the notice of Federal tax lien covered three periods.

as arising from Forms 941. The notices informed Ms. Britton of her right to request a collection due process (CDP) hearing before the IRS's Office of Appeals and enclosed for that purpose blank Forms 12153, Request for a Collection Due Process or Equivalent Hearing.

Before Ms. Britton's CDP hearing was conducted by the IRS Office of Appeals (discussed below), IRS collection personnel continued their work on her liabilities to some extent. Beginning January 16, 2008, collection personnel corresponded with Ms. Britton's husband about the Brittons' request that the lien on her home be released, because (the Brittons alleged) Ms. Britton had no equity in the house, since Ms. Britton owed a mortgage to Mr. Britton. According to the collection personnel's record, Ms. Britton alleged that she "gave her husband Randy a $100,000 mortgage after the LLC taxes accrued and were assessed, and one week before the NFTL [notice of Federal tax lien] was recorded", but "Mr. Britton did not provide proof that there was actual transfer of value in exchange for the mortgage granted to him". In late January the collection personnel decided not to discharge the lien, and on February 6, 2008, the IRS sent the Brittons a letter advising them that their application for a discharge was not accepted.

CDP proceedings

Ms. Britton timely requested a collection due process (CDP) hearing before the Office of Appeals with respect to both collection notices by submitting to the IRS on January 9, 2008, a Form 12153.[6] The Form 12153 names Ms. Britton as the person requesting the hearing, gives the LLC's EIN, states the Beverly address, and refers to the Form 941 liabilities. Ms. Britton did not propose a collection alternative on her Form 12153 but rather requested withdrawal of the lien and requested penalty abatement. As in Medical Practice I, 132 T.C. at 126-127, she argued in her Form 12153 that the "[c]ollection action is against the wrong tax payer [sic]; the IRS check the box rules are invalid".

On February 19, 2008, an IRS appeals officer[7] sent a letter to Ms. Britton scheduling her CDP hearing before the Office of Appeals for March 4, 2008. The letter was addressed to--

---

[6]The Form 12153 bore Ms. Britton's name (not the name of the LLC) and was signed by Ms. Britton's husband and attorney-in-fact, Randy Britton.

[7]The employee who conducted the CDP hearing is identified in the hearing record as a "settlement officer". Section 6330(c)(1) and (c)(3) refers to the person who conducts the CDP hearing as an "appeals officer"; but section 6330(b)(3) refers to the person as "an officer or employee", and section 6330(b)(1) and (d)(2) refers more generally to the "Internal Revenue Service Office of Appeals". We use the statutory term "appeals officer" throughout this opinion.

MEDICAL PRACTICE SOLUTIONS LLC
CAROLYN BRITTON SOLE MBR

--at the Beverly address.  On March 3, 2008, Ms. Britton's husband and representative requested a face-to-face hearing.  To accommodate this request the appeals officer rescheduled the CDP hearing to March 6, 2008.  On March 6, 2008, the CDP hearing was held between Mr. Britton and the appeals officer.  Mr. Britton disputed whether the notice of lien was properly filed under section 6323 because it listed Ms. Britton and her personal address, but the notice required by section 6320 was sent to the Beverly address.  The appeals officer advised Mr. Britton that he would look into the lien issue.  Mr. Britton inquired about an installment agreement, but he did not propose one.  As a result, the appeals officer advised Mr. Britton that Ms. Britton had until April 9, 2008, to provide proof of the LLC's compliance with filing and payment obligations and to propose any collection alternatives for consideration.

Following the CDP hearing, the appeals officer researched the lien issue and determined that the lien had been properly filed against Ms. Britton because the LLC is a disregarded entity.  During the course of the appeals officer's research he discovered that Ms. Britton had petitioned this Court (i.e., in Medical Practice I, docket No. 14668-07L) with respect to a notice of determination for prior tax periods of the LLC.  Those other periods were still under the jurisdiction of the IRS's

Office of Chief Counsel and this Court.  As a result, the appeals officer phoned Ms. Britton's attorney-in-fact to inform him that the IRS's Office of Appeals could not consider any collection alternatives because of the pending CDP appeal with respect to the other periods.  Furthermore, the appeals officer determined in his final review of Ms. Britton's case on April 22, 2008, that even apart from the pending CDP appeal, Ms. Britton would not be eligible for any collection alternatives because the LLC was not current with Federal tax deposit requirements.

On May 9, 2008, the Office of Appeals issued two Notices of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330:  one sustaining the filing of the notice of Federal tax lien for tax periods ending September 30, 2006, December 31, 2006, and June 30, 2007, and one sustaining the proposed levy to collect the unpaid taxes for tax periods ending December 31, 2006, and June 30, 2007.  As in Medical Practice I, both notices were "sent to Britton as the sole member of the LLC".  132 T.C. at 127.  That is, the name of the recipient stated on the notice was--

> MEDICAL PRACTICE SOLUTIONS LLC
> CAROLYN BRITTON SOLE MBR

--and the address used for the notice was the Beverly address.

In attachments to the notices, the appeals officer stated: "With the best information available, the requirements of various applicable law or administrative procedures have been met".

However, the attachments to the notices did not describe the
"best information available" that the appeals officer used to
verify that the requirements had been met.  The attachments do
state that "[t]ranscripts of the taxpayer's accounts show the
Service Center issued [notice and demand]" for payment.  However,
the attachments do not indicate that transcripts were also
consulted to verify that proper assessments had been made.

Prior proceedings in this case

On June 16, 2008, Ms. Britton timely petitioned this Court
to review the notices of determination.  The petition alleges
seven points of error that can be grouped into the following four
issues (which we discuss below in parts II.A through II.D):

(A)  whether the appeals officer obtained the requisite
     verification that "applicable law or administrative
     procedure" had been satisfied under section
     6330(c)(1);[8]

(B)  whether Ms. Britton is personally liable for the tax
     liabilities of the LLC;

(C)  whether the appeals officer erred in refusing to
     consider a collection alternative; and

---

[8]We construe broadly the petition of Ms. Britton as a pro se
litigant.  See Rule 31(d); Swope v. Commissioner, T.C. Memo.
1990-82.  The petition's references to defects in the assessment
and in the issuance of notices and to lack of "proper procedure"
were sufficient to plead a dispute as to whether verification was
obtained as required by section 6330(c)(1).

(D)   whether the lien on Ms. Britton's house should have

been released given her alleged lack of equity in it.[9]

On March 16, 2009, the parties jointly moved under Rule 122 that the case be decided on the basis of a stipulated record.  We found that the stipulated record showed verification of only one of the four legal and administrative requirements that should have been verified (i.e., it showed that Ms. Britton was given notice of intent to levy, see secs. 6330(a)(1), 6331(d)(1), and notice of the filing of a Federal tax lien, see sec. 6320(a)(1), and of her right to a hearing, see secs. 6320(a)(3)(B), 6330(a)(3)(B), 6331(d)(4)(C)).  However, we found that the record did not show verification of the other three requirements (i.e., the IRS's timely assessment of the liability, see secs. 6201(a)(1), 6501(a); the taxpayer's failure to pay the liability, see secs. 6321, 6331(a); and the giving to the taxpayer of notice and demand for payment of the liability, see sec. 6303, before any levy, see sec. 6331(a)).  Consequently, we did not address issues (B), (C), and (D) above.  Rather, by our

---

[9]We previously stated that Ms. Britton did not raise her contention as to equity in her home in her Form 12153 (requesting the CDP hearing) nor at the CDP hearing.  Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214 n.7. Respondent allows, however, that if her Form 12153 is "liberally constru[ed]", then the issue may have been implicitly raised in the contention in Form 12153 that "the filing of the notice [of lien] was * * * not in accordance with administrative procedures".  We therefore assume that the issue was raised in Ms. Britton's request for a CDP hearing, and we discuss it below in part II.D.

order of September 16, 2009, we remanded the case to the Office of Appeals so that it could "clarify the record as to verification".

Compliance with the order of remand

The appeals officer who had conducted the first CDP hearing had retired, and a different appeals officer was appointed to conduct the supplemental hearing. She examined the file developed during the first CDP hearing, and she found transcripts and other documents that had been consulted by the prior appeals officer. She concluded that the documents showed the prior appeals officer had verified the fulfillment of the legal and administrative requirements.

The appeals officer also did her own independent review and verified that the legal and administrative requirements had been satisfied. On November 3, 2009, she mailed to Mr. and Ms. Britton copies of a Form 4340 for each of the periods, each of which shows a timely assessment, an unpaid balance, and the mailing of a "Statutory Notice of Balance Due" before the mailing of a "Statutory Notice of Intent to Levy" and "Federal Tax Lien". The Forms 4340 identify the taxpayer as--

> MEDICAL PRACTICE SOLUTIONS LLC
> BRITTON CAROLYN SOLE MBR

--and they all bear the LLC's EIN. Having thus obtained the verification required by section 6330(c)(1), the Office of Appeals issued a supplemental notice of determination.

The parties reported on their compliance with the Court's remand order, and they then cross-moved for summary judgment.

## Discussion

I. Applicable legal principles

A. Collection review principles

1. Agency-level action

If a taxpayer fails to pay any Federal income tax liability after notice and demand, chapter 64 of the Code provides two means by which the IRS can collect the tax: First, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323(f) authorizes the IRS to file notice of that lien. Second, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property.

However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Liens" and "Due Process for Collections". The IRS must comply with those provisions after filing a tax lien and before proceeding with a levy. Within five business days after filing a tax lien, the IRS must provide written notice of that filing to the taxpayer. Sec. 6320(a). After receiving such a notice, the taxpayer may request an

administrative hearing before the Office of Appeals.[10]
Sec. 6320(b)(1). Similarly, before proceeding with a levy, the
IRS must issue a final notice of intent to levy and notify the
taxpayer of the right to an administrative hearing before the
Office of Appeals. Sec. 6330(a) and (b)(1). Administrative
review is carried out by way of a hearing before the Office of
Appeals under section 6330(b) and (c); and if the taxpayer is
dissatisfied with the outcome there, it can appeal that
determination to this Court under section 6330(d), as Ms. Britton
has done.

The pertinent procedures for the agency-level CDP hearing
are set forth in section 6330(c). First, the appeals officer
must obtain verification from the Secretary that the requirements
of any applicable law or administrative procedure have been met.
Sec. 6330(c)(1) (discussed below in part II.A). Second, the
taxpayer may "raise at the hearing any relevant issue relating to
the unpaid tax or the proposed levy," including challenges to the
appropriateness of the collection action and offers of collection
alternatives. Sec. 6330(c)(2)(A). (Such issues are discussed
below in parts II.C, II.D, and II.E.) Additionally, the taxpayer
may contest the existence and amount of the underlying tax

---

[10]To the extent practicable, a CDP hearing concerning a lien
under section 6320 is to be held in conjunction with a CDP
hearing concerning a levy under section 6330, and the conduct of
the lien hearing is to be in accordance with the relevant
provisions of section 6330. See sec. 6320(b)(4), (c).

liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). (Ms. Britton's challenge of the underlying liability is discussed below in part II.B.) After considering those issues, the Office of Appeals issues its notice of determination. See sec. 6330(c)(3).

2. Judicial review

If the taxpayer is not satisfied with the determination of the Office of Appeals, the taxpayer may "appeal such determination to the Tax Court". Sec. 6330(d)(1). Where underlying liability is at issue (pursuant to section 6330(c)(2)(B)), we review de novo the determination of the Office of Appeals as to the underlying tax liability. We review IRS determinations of issues other than liability for abuse of discretion, Goza v. Commissioner, 114 T.C. 176, 182 (2000)--that is, whether the determination was arbitrary, capricious, or without sound basis in fact or law, see Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000).

This Court has held that an appeal pursuant to section 6330 is resolved by a de novo trial, Robinette v. Commissioner, 123 T.C. 85 (2004), revd. 439 F.3d 455 (8th Cir. 2006), but the Court of Appeals for the First Circuit follows the "record rule". That is, subject to "limited exceptions", "the administrative record

rule * * * applies to a taxpayer's CDP hearing appeal to the Tax Court", so that the Tax Court "could not consider evidence outside of the administrative record in ruling on a taxpayer's CDP hearing appeal", and "judicial review normally should be limited to the information that was before the IRS when making the challenged rulings." Murphy v. Commissioner, 469 F.3d at 31. In this case, because an appeal would lie to the U.S. Court of Appeals for the First Circuit, we follow its precedent. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Consistent with Murphy, respondent's motion for summary judgment relies solely on the record of the CDP hearing.

B. Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue as to any material fact and a decision can be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

The party moving for summary judgment bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable

to the party opposing summary judgment.  Dahlstrom v.
Commissioner, 85 T.C. 812, 821 (1985).  Respondent's motion
carries that burden and is fully supported by the appeals
officer's declaration and by the Forms 4340, which are self-
authenticating under Rule 902(11) of the Federal Rules of
Evidence.

II.  Respondent's entitlement to summary judgment

Respondent has shown that there is no genuine issue as to
any material fact and that he is entitled to judgment as a matter
of law.  We discuss here the issues that Ms. Britton has raised,
none of which effectively contradicts respondent's showing.

A.   Respondent has shown verification as required by
     section 6330(c)(1).

Section 6330(c)(1) requires the appeals officer conducting a
CDP hearing to "verify that the requirements of any applicable
law or administrative procedure have been met."  Hoyle v.
Commissioner, 131 T.C. 197, 199, 201-203 (2008).  In the case of
a self-reported tax liability, the basic legal requirements for
which the appeals officer must obtain verification in order to
sustain the filing of a notice of Federal tax lien or to
determine to proceed with a levy are:

- the IRS's timely assessment of the liability,
  secs. 6201(a)(1), 6501(a);

- the taxpayer's failure to pay the liability,
  secs. 6321, 6331(a);

- the giving to the taxpayer of notice and demand for payment of the liability, sec. 6303, before any levy, sec. 6331(a); and

- the giving to the taxpayer of notice of intent to levy, secs. 6330(a)(1), 6331(d)(1), or notice of the filing of a Federal tax lien, sec. 6320(a)(1), and of the taxpayer's right to a hearing, secs. 6320(a)(3)(B), 6330(a)(3)(B), 6331(d)(4)(C).

We previously found that the documents from the initial CDP hearing that were put into the record of this case by the stipulation of the parties did not show verification of the first three of those requirements, and we remanded the case to the Office of Appeals to clarify those matters.

Respondent has now demonstrated that the verification was obtained--i.e., that the IRS made timely assessments, that it gave Ms. Britton notice and demand for payment, that Ms. Britton did not fully pay the liabilities, and that the IRS gave her notice of the lien and the proposed levy and of her right to a hearing. At the supplemental hearing, the appeals officer both reconstructed the information available at the original CDP hearing (which she confirmed by reviewing documents in the administrative record that had not previously been included in our record in this appeal) to confirm that these requirements were verified at that hearing and made her own verification of these requirements with, inter alia, updated information on Forms 4340 from the IRS's records. Respondent's motion sets out

in detail, with citations of the IRS's records, its compliance with the applicable requirements.

Ms. Britton suggests no error in respondent's analysis. Rather, her principal contention as to verification is in effect a restatement of her contention that she is not liable for the LLC's employment taxes.  That is, she contends that the Office of Appeals did not obtain verification that the liabilities had been assessed <u>against her</u>, rather than against the LLC.  We now turn to that contention.

B.    <u>Ms. Britton and the LLC are not distinct taxpayers, and she is liable for its taxes</u>.

As is noted above, section 6330(c)(2)(B) permits some taxpayers to "raise at the [CDP] hearing challenges to the existence or amount of the underlying tax liability", and respondent does not dispute that Ms. Britton was eligible to raise such challenges at her hearing.  Ms. Britton makes several related arguments that challenge her liability, and they all rest on her insistence that she and the LLC are distinct taxpayers with distinct liabilities and the right to distinct notices and filings.  This premise, however, is flawed both as a matter of law and as a matter of fact.

As for the law, Ms. Britton attempts to dispute here the validity of the "check-the-box" regulations, 26 C.F.R. section 301.7701-3(b), Proced. & Admin. Regs., pursuant to which an LLC that does not elect corporate status is treated as a disregarded

entity.  In Ms. Britton's prior case, however, we held that the regulation is valid and that when a single-member LLC fails to pay its employment taxes, collection may proceed against the single member as if "the LLC and its sole member are a single taxpayer or person to whom notice is given."  Medical Practice I, 132 T.C. at 127.[11]

Consequently, Ms. Britton's arguments about the liability of the LLC versus her own liability, or assessments being made against the LLC and not herself, or the use of the LLC's EIN rather than her Social Security number, or the presence of both her name and the LLC's name on the demand for payment and the Forms 4340, or notices of the lien and of the proposed levy being given to herself rather than to the LLC--all of these arguments fail because Ms. Britton and the LLC are, as we explicitly held, "a single taxpayer or person to whom notice is given."  Id.  When the IRS thereafter issued notices of lien and proposed levy to Ms. Britton, it addressed the correct taxpayer.  When the Office of Appeals sustained the lien and proposed levy in notices of

---

[11]Our decision in Medical Practice I aligned itself with uniform authority, including the judgment of two Courts of Appeals.  See McNamee v. Dept. of the Treasury, 488 F.3d 100 (2d Cir. 2007); Littriello v. United States, 484 F.3d 372 (6th Cir. 2007).  We note, however, that for employment taxes related to wages paid on or after January 1, 2009 (i.e., after the periods in issue), a disregarded entity is treated as a corporation for purposes of employment tax reporting and liability.  26 C.F.R. sec. 301.7701-2(c)(2)(iv), Proced. & Admin. Regs.

determination issued to Ms. Britton as sole member of the LLC, it made no mistake.

Ms. Britton seems to lay special stress on the fact that respondent "admits" that the IRS "only assessed the tax liability against MPS under its Employee Identification Number", rather than under Ms. Britton's number.  However, the IRS's issuance of an Employer Identification Number does not necessarily indicate the existence of a distinct taxpayer.  On the contrary, some individuals have "both a social security number * * * and an employer identification number".  26 C.F.R. sec. 301.6109-1(d)(4)(ii), Proced. & Admin. Regs.[12]  An individual who is an employer or a sole proprietor is instructed to apply for and use an EIN for use in the employment context.  See 26 C.F.R. sec. 31.6011(b)-1(a)(ii), Employment Tax Regs.; sec. 301.6109-1(a)(ii)(D), Proced. & Admin. Regs.  Ms. Britton put the LLC's EIN on the returns, thereby inducing the IRS to record the employment tax assessments under that number.  She could not, by that act, frustrate the principle that a disregarded entity's employment tax liability is the liability of the LLC's sole

---

[12]"Social security number" is defined in 26 C.F.R. sec. 301.7701-11, Proced. & Admin. Regs., and "employer identification number" is defined in 26 C.F.R. sec. 301.7701-12, Proced. & Admin. Regs.  See also 26 C.F.R. sec. 301.6109-1(a)(1), Proced. & Admin. Regs. (describing the principal types of taxpayer identifying numbers).

member. If her use of that EIN was a technical error,[13] it was her error; and she could not by such an error avoid her liability for employment taxes. Consequently, when the IRS assessed the employment taxes under the LLC's EIN, Ms. Britton became liable.

As for the facts, there can be no plausible suggestion that Ms. Britton was confused or misled about the IRS's assertion of her liability for the LLC's employment taxes. She signed and filed two of the LLC's three Form 941 returns that gave rise to the liabilities, and her husband and representative signed the third. On her own Form 12153 requesting the CDP hearing, she gave her own name <u>and the LLC's EIN and the Beverly address</u>. The IRS's notice of lien and notice of intent to levy for the "941" taxes were both issued in Ms. Britton's name; and the notices of determination included her name along with the name of the LLC. Ms. Britton's petition insists that the notices of lien and proposed levy "were improperly sent to the business address of Medical Practice Solutions, LLC",[14] and respondent states that

---

[13]26 C.F.R. sec. 301.6109-1(h)(2), Proced. & Admin Regs., provides that "a single owner entity that is disregarded as an entity separate from its owner under § 301.7701-3, must use its owner's taxpayer identifying number (TIN) for federal tax purposes." The record in this case does not show that Ms. Britton has ever obtained a distinct TIN for herself (apart from the LLC's EIN), and we therefore cannot rule out the possibility that the LLC's EIN is in fact Ms. Britton's TIN.

[14]It is not clear whether the use of the Beverly address on the notices was incorrect. The Code requires that such notices be "(A) given in person; (B) left at the dwelling or usual place
(continued...)

instead they "should have been sent to petitioner's home address" in Lexington; but respondent correctly asserts that any such error was harmless, since Ms. Britton did in fact receive the notices in time to request a CDP hearing and did in fact request and receive a hearing.[15]

As we held in Medical Practice I, Ms. Britton and the LLC "are a single taxpayer".  She is liable for its employment taxes.

    C.    Ms. Britton has abandoned her contention that the Office of Appeals abused its discretion by failing to consider an installment agreement.

In her petition Ms. Britton argued that she should have been allowed to enter into an installment agreement to pay the

_____

[14](...continued)
of business of such person; or (C) sent by certified or registered mail, return receipt requested, to such person's last known address".  See sec. 6330(a)(2) (emphasis added); see also sec. 6320(a)(2).  If Ms. Britton and the LLC are "a single taxpayer or person to whom notice is given", Medical Practice I, 132 T.C. at 127 (emphasis added), then a notice mailed to the LLC's address has arguably been mailed to the sole member's address.

[15]Cf. Estate of Brandon v. Commissioner, 133 T.C. ___, ___ (2009) (slip op. at 8) ("the intent of section 6320 was fulfilled because the estate received notice, made a timely request for, and received, a hearing relating to the" notice of Federal tax lien); Mulvania v. Commissioner, 81 T.C. 65, 67-68 (1983) (an erroneously addressed notice of deficiency under sec. 6212 is nevertheless valid if the taxpayer receives actual notice of the Commissioner's determination in a timely fashion); Barmes v. IRS, 116 F. Supp. 2d 1007, 1014 (S.D. Ind. 2000) (an erroneously addressed notice and demand under sec. 6303 is nevertheless valid where the notice "contained * * * [the taxpayer's] name, stated the amount of tax owing, and reached * * * [the taxpayer] at the address of his business.  Therefore, the formal requirements of the statute have been met. To be sure, [the taxpayer] * * * had actual notice of the assessment").

liabilities at issue.  However, while her representative did express to the appeals officer an interest in such an agreement, Ms. Britton never actually proposed any installment agreement; and the appeals officer determined in April 2008 that she was ineligible for an installment agreement because she was "not in compliance with federal tax deposits".[16]  In our previous opinion in this case we did not decide this issue, but we noted "the apparent lack of merit in her contentions about collection alternatives" and observed that "[t]he Office of Appeals does not abuse its discretion to reject a collection alternative where (as appears, from the record before us, to be the case here) the taxpayer did not propose a specific alternative, see Cavazos v. Commissioner, T.C. Memo. 2008-257".  Med. Practice Solutions, LLC v. Commissioner, T.C. Memo. 2009-214 (slip op. at 14-15 and n.14).

Ms. Britton has not renewed this argument in any subsequent filing; and we find that she has abandoned it.

D. The Office of Appeals did not abuse its discretion by declining to discharge the lien on Ms. Britton's house.

Before Ms. Britton's CDP hearing with the Office of Appeals, IRS collection personnel had decided not to discharge the lien on

---

[16]See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007) ("Internal Revenue Service guidelines require a taxpayer to be current with filing and payment requirements to qualify for an installment agreement"); see Internal Revenue Manual pt. 5.14.1.4.1(19) (Sept. 26, 2008) ("Compliance with filing, paying estimated taxes, and federal tax deposits must be current from the date the installment agreement begins" (emphasis added)).

her house.  She had argued that she had no equity in the house, but the IRS determined that Ms. Britton "gave her husband Randy a $100,000 mortgage after the LLC taxes accrued and were assessed, and one week before the NFTL [notice of Federal tax lien] was recorded", and that "Mr. Britton did not provide proof that there was actual transfer of value in exchange for the mortgage granted to him".  We assume, see supra note 9, that general language in her initial request for a CDP hearing-- "the filing of the notice [of lien] was * * * not in accordance with administrative procedures"--raised this issue in the CDP context.  For purposes of respondent's motion for summary judgment, we also assume (as Mr. Britton states in his declaration) that at the first hearing with the original appeals officer, Mr. Britton "raised the issue of equity in the home".

However, there is no other information in the CDP hearing record that relates to this issue.  In particular, there is no information in the CDP hearing record about the value of the house or about any mortgage loans or their unpaid balances.[17]

---

[17]The only information that Mr. Britton's declaration cites is from prior communication not with the Office of Appeals but with collection personnel--i.e., the "ICS History Transcript" that does recount, at 19-27, exchanges of information about mortgages.  "The Integrated Collection System (ICS) provides workload management, case assignment/tracking, inventory control, electronic processing, and case analysis tools to support the SB/SE [Small Business/Self-Employed] organization collection fieldwork."  IRM 5.1.20.2.2.1(1) (May 27, 2008) (emphasis added).  Thus, the information exchanges recounted in the ICS History Transcript are communications not with Appeals but with SB/SE collection personnel.  The transcript therefore does nothing to
(continued...)

From the Court's previous opinion Ms. Britton was on notice that the issue was not even apparent--much less substantiated--in the CDP hearing record.  In this appeal Ms. Britton did not allege that any information was omitted from the CDP record, did not attempt to supplement the record in any way, and did not request or attempt to substantiate this issue in the supplemental hearing on remand.

Given this cursory and paperless "rais[ing]" of this issue, we cannot find, even entertaining all presumptions in Ms. Britton's favor, that the appeals officer abused her discretion by failing to consider whether the lien on Ms. Britton's house should be discharged.  The record before her included nothing to support an argument that a discharge was warranted.

E.  <u>Ms. Britton shows no lack of an "Impartial Officer"</u>.

After the supplemental CDP hearing, Ms. Britton raised an additional argument under the rubric of "ex-parte communications".  Sections 6320(b) (concerning notices of liens) and 6330(b) (concerning notices of proposed levy) are both entitled "Right to Fair Hearing", and they both set out, in equivalent language, certain principles that are to govern the CDP hearing. One of those principles is in sections 6320(b)(3) and 6330(b)(3),

---

[17](...continued)
show what information (if any) Ms. Britton provided during her CDP hearing.

which are both entitled "Impartial Officer" and which both provide:

> The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing under this section * * *.

To further implement this impartiality principle, the Commissioner promulgated Revenue Procedure 2000-43, 2000-2 C.B. 404, which provides that appeals officers are not allowed to have ex-parte communications with other IRS employees that would appear to compromise the independence of their review function. See Indus. Investors v. Commissioner, T.C. Memo. 2007-93, 93 T.C.M. (CCH) 1126, 1128 (2007), affd. 353 Fed. Appx. 90 (9th Cir. 2009). Ex-parte communications are "communications that take place between Appeals and another Service function without the participation of the taxpayer or the taxpayer's representative" and are "prohibited to the extent that such communications appear to compromise the independence of Appeals." Rev. Proc. 2000-43, sec. 3, Q&A-1, 2000-2 C.B. at 405.

Ms. Britton invokes this ex-parte communications principle in an attempt to invalidate the CDP proceedings that have been conducted in this case, but she distorts the actual principle. She seems to argue that because printouts of IRS transcripts were generated by personnel other than the appeals officer herself who made the verification, her work involved impermissible "ex parte communications", and she lacked independence and failed to be an impartial officer. However, by requiring the appeals officer to

"obtain verification <u>from the Secretary</u>", sec. 6330(c)(1) (emphasis added), the statute plainly reflects the expectation that information will be obtained from other personnel, see also Rev. Proc. 2000-43, sec. 3, Q&A-5, 2000-2 C.B. at 405-406 (describing permissible communication with non-Appeals personnel).

"Ex parte communications" with IRS collection personnel might compromise the independence of the Office of Appeals; but if (as it appears) Ms. Britton objects to the appeals officer's consultation with her colleagues in the Office of Appeals, then she misunderstands the applicable principles. Generally, "[i]ntra-Appeals communications during the deliberation process do not compromise or appear to compromise that independence. Appeals employees may communicate freely with other Appeals employees without inviting the taxpayer/representative to participate." <u>Id.</u>, Q&A-3, 2000-2 C.B. at 405.

To the extent Ms. Britton complains about the appeals officer's consultation with attorneys from the Office of Chief Counsel who are responsible for this litigation, she similarly misunderstands the ex-parte communications principles. Revenue Procedure 2000-43, sec. 3, Q&A-11, 2000-2 C.B. at 406-407, states that "[d]ocketed cases will be handled in accordance with Rev. Proc. 87-24, [sec. 2.06] 1987-1 C.B. 720 [, 721]," which sensibly allows consultation between Appeals and the Office of Chief Counsel.

Focusing on the statutory requirement that the appeals officer must have had "no prior involvement", Ms. Britton seems to argue that once an employee in the Office of Appeals has had any connection with her case, he is disabled by that "prior involvement" from working on the next phase of her case and therefore taints the proceedings by his involvement. However, what sections 6320(b)(3) and 6330(b)(3) actually prohibit is "<u>prior involvement</u> with respect to the unpaid tax * * * <u>before the first hearing</u> under this section". (Emphasis added.) This prohibition has no application to Office of Appeals personnel who, before Ms. Britton requested her CDP hearing, had no prior involvement with the LLC's employment taxes for the three periods at issue here. Any personnel eligible to work on her CDP hearing are thereafter eligible to work on any supplemental hearing.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.