*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FRANK A. LITTRIELLO,

　　　　　*Plaintiff-Appellant,*

　　　　　*v.*

UNITED STATES OF AMERICA and UNITED STATES
DEPARTMENT OF TREASURY,

　　　　　*Defendants-Appellees.*

> No. 05-6494

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 04-00143—John G. Heyburn II, Chief District Judge.

Argued: July 21, 2006

Decided and Filed: April 13, 2007

Before: KENNEDY and DAUGHTREY, Circuit Judges; ADAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Irwin G. Waterman, SEILLER WATERMAN LLC, Louisville, Kentucky, for Appellant. Bridget M. Rowan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Irwin G. Waterman, Michael T. Hymson, SEILLER WATERMAN LLC, Louisville, Kentucky, for Appellant. Bridget M. Rowan, David I. Pincus, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

---

## OPINION

---

　　　　MARTHA CRAIG DAUGHTREY, Circuit Judge. In this appeal from a grant of summary judgment to the government, we are presented with a case of first impression regarding the validity of the Treasury Department's so-called "check-the-box" regulations, 26 C.F.R. §§ 301.7701-1 to 301.7701-3, promulgated in 1996 to simplify the classification of business entities for tax purposes.

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

1

The plaintiff, Frank Littriello, was the sole owner of several Kentucky limited liability companies (LLCs), the operation of which resulted in unpaid federal employment taxes totaling $1,077,000. Because Littriello was the sole member of the LLCs and had not elected to have the businesses treated as "associations" (*i.e.,* corporations) under Treasury Regulations §§ 301.7701-3(a) and (c), the LLCs were "disregarded" as separate taxable entities and, instead, were treated for federal tax purposes as sole proprietorships under Treasury Regulation § 301.7701-3(b)(1)(ii). When Littriello, as sole proprietor, failed to pay the outstanding employment taxes, the IRS filed notices of determination and, eventually, notified him of its intent to levy on his property to enforce previously filed tax liens. Littriello responded by initiating complaints for judicial review in district court, contending that the regulations in question (1) exceed the authority of the Treasury to issue regulatory interpretations of the Internal Revenue Code; (2) conflict with the principles enunciated by the Supreme Court in *Morrissey v. Commissioner*, 296 U.S. 344 (1935); and (3) disregard the separate existence of an LLC under Kentucky state law. He also argued in his motion for summary judgment that the regulations are not applicable to employment taxes. After the cases were consolidated for disposition, the district court held that the "check-the-box regulations" are "a reasonable response to the changes in the state law industry of business formation," upheld them under *Chevron*[1] analysis, and held that the plaintiff was individually liable for the employment taxes at issue. We conclude that the district court's analysis was correct and affirm.

## *PROCEDURAL AND FACTUAL BACKGROUND*

Frank Littriello was the owner of several business entities, including Kentuckiana Healthcare, LLC; Pyramid Healthcare Wisc. I, LLC; and Pyramid Healthcare Wisc. II, LLC. Each of these businesses was organized as a limited liability company under Kentucky law, with Littriello as the sole member. He did not elect to have them treated as corporations for federal tax purposes and, as a result, none of the LLCs was subject to corporate income taxation. For the tax years in question, Littriello reported his income from the three businesses on Schedule C of his individual income tax return – the schedule on which the profits and losses of a sole proprietorship are reported. Because the LLCs were "disregarded entities" under the pertinent tax regulations, and not corporate entities, the IRS assessed Littriello for the full amount of the unpaid employment taxes for 2000-2002.

In January 2003, the Internal Revenue Service informed Littriello that it intended to enforce the liens that had been filed against his property as security for the unpaid taxes. In response, Littriello requested a hearing, which produced a determination by the IRS Appeals Office that Littriello was individually liable as a sole proprietor under Treasury Regulation § 301.7701-3(b)(1)(ii), as a result of his failure to elect to be treated as a corporation.

Littriello filed suit in district court contesting the finding of liability and contending, among other things, that Treasury Regulations §§ 301.7701-1 – 301.7701-3 (the "check-the-box regulations") were invalid. Relying on *Chevron*, the district court rejected Littriello's challenge to the regulations. The district court upheld the assessment against Littriello, ruling that the governing provisions of the Internal Revenue Code, found in 26 I.R.C. § 7701, were ambiguous and that the IRS's regulatory interpretation, including the check-the-box provisions, was "a reasonable response to the changes in the state law industry of business formation." This appeal followed.

## *DISCUSSION*

The Treasury Regulations at the heart of this litigation, 26 C.F.R. §§ 301.7701-1– 301.7701-3, were issued in 1996 to clarify the rules for determining the classification of certain business

---

[1]*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

entities for federal tax purposes, replacing the so-called "Kintner regulations."[2]   The earlier regulations had been developed to aid in classifying business associations that were not incorporated under state incorporation statutes but that had certain characteristics common to corporations and were thus subject to taxation as corporations under the federal tax code.  Corporate income is, of course, subject to "double taxation" – once at the corporate level under I.R.C. § 11(a) and again at the individual-shareholder level, pursuant to I.R.C. § 61(a)(7).  In contrast, partnership income benefits from "pass-through" treatment – it is taxed once, not at the business level but only after it passes through to the individual partners and is taxed as income to them, pursuant to I.R.C. §§ 701 - 777.  A sole proprietorship – in which a single individual owns all the assets, is liable for all debts, and operates in an individual capacity – is also taxed only once.

The Kintner regulations built on an even earlier standard, set out by the Supreme Court in *Morrissey*, in which the Court addressed the tax code provision that included an "association" within the definition of a corporation, in order to determine whether a "business trust" qualified as an "association" for federal tax purposes. 296 U.S. at 346.  *Morrissey* identified certain characteristics as those typical of a corporation, including the existence of associates, continuity of the entity, centralized management, limited personal liability, transferability of ownership interests, and title to property.  *Id.* at 359-61.  However, the Court did not hold that a specific number of those characteristics had to be present in order to establish the business entity as a corporation, nor did it address the consequence of a partnership having some of those characteristics, leaving the distinctions between and among the various defined entities less than clear.

Meant to clarify some of the confusion created in the wake of *Morrissey*, the Kintner regulations developed four essential characteristics of a corporate entity and provided that an unincorporated business would be treated as an "association" – and, therefore, as a corporation rather than a partnership – if it had three of those four identifying characteristics.  *See* former Treas. Reg. §§ 301.7701-2(a)(1) and (3).  The Kintner regulations, adequate to provide a measure of predictability at the time of their promulgation in 1960 and for several decades afterward, proved less than adequate to deal with the new hybrid business entities – limited liability companies, limited liability partnerships, and the like – developed in the last years of the last century under various state laws.  These unincorporated business entities had the characteristics of both corporations and partnerships, combining ease of management with limited liability, and were increasingly structured with the Kintner regulations in mind, in order to take advantage of whatever classification was thought to be the most advantageous.  The "Kintner exercise" required skillful lawyering by business entities and case-by-case review by the IRS; it quickly came to be seen as squandering of resources on both sides of the equation.

As a result, the IRS undertook to replace the Kintner regulations with a more practical scheme, consistent with existing tax statutes and with a new provision in I.R.C. § 7704 treating publicly-traded entities as corporations, regardless of their structure or status under state law.  As to the unincorporated business associations not covered by § 7704, including the newly emerging hybrid entities, the IRS proposed to allow an election by the taxpayer to be treated as a corporation or, in the absence of such an election, to be "disregarded," *i.e.*, deemed a partnership (for entities with multiple members) or a sole proprietorship (for those with a single member).  After a period for notice and comment, the new regulations were issued and became effective on January 1, 1997, implementing the definitional provisions of §§ 7701(a)(2) and (3). The regulations were particularly helpful with regard to the tax status of the new hybrids, because the hybrid entities were not, and still are not, explicitly covered by the definitions set out in § 7701.  What was avoided by the resulting "check-the-box" provisions was the necessity of forcing those hybrids to jump through the Kintner

---

[2] *See United States v. Kintner*, 216 F.2d 418 (9th Cir. 1954).

regulation "hoops" in order to achieve a desired – and perfectly legal – classification for federal tax purposes.

The district court noted that Littriello's unincorporated businesses had not elected to be treated as corporations under the new regulations and were, therefore, deemed by the IRS to be sole proprietorships. This result provided Littriello with a major tax advantage: his income from the healthcare facilities would be taxed to him only once. But, of course, it also meant that he would be responsible not only for taxes on business income but also for those federal employment taxes that were required by statute and that had not been paid for the years in question.

The district court found that the regulations were a reasonable interpretation by the IRS of a tax statute (I.R.C. § 7701) that was otherwise ambiguous, upheld them under *Chevron* analysis, after noting that it was apparently the first court asked to review those regulations, and held Littriello individually liable for the amounts assessed by the IRS. In doing so, the district court rejected Littriello's arguments that the Secretary of the Treasury had exceeded his authority in promulgating the entity-classification regulations, that the regulations are invalid under *Morrissey*, and that they impermissibly altered the legal status of his state-law-created LLC. Before this court, Littriello also contends that the regulations do not apply to employment taxes, an argument that depends, at least in part, on proposed amendments to the entity-classification regulations that were not circulated until after the appeal in this case was filed.

## A.  *Chevron Analysis*

The first two arguments raised by Littriello are intertwined. He contends that the statute underlying the "check-the-box" regulations is unambiguous and that the district court's invocation of *Chevron* was, therefore, erroneous. Under *Chevron*, a court reviewing an agency's interpretation of a statute that it administers must first determine "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If congressional intent is clear, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *see also Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (when a statute is silent or ambiguous, the court must "defer to a reasonable construction by the agency charged with its implementation").

Littriello argues, first, that *Chevron* has been modified by the Supreme Court's recent decision in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005), which "seems to revise the *Chevron* formula by substituting as the second agency requirement 'reasonableness' for 'permissible construction of the statute.'" But this argument overlooks the fact that the *Chevron* opinion uses the terms "reasonable" and "permissible" interchangeably in reference to statutory construction. *See*, *e.g.*, 467 U.S. at 843, 845. Second, and more substantially, he posits that the regulations run afoul of *Morrissey*, "the seminal case on § 7701," which he reads to hold that the IRS is legally required to determine the classification of a taxpayer-business within the definitions set out in the statute and may not "abdicate the responsibility of making that determination to the taxpayer itself" by permitting an election of classification such as a "check-the-box" option.

Although the plaintiff's *Morrissey* argument is not a model of clarity, it seems to depend on the proposition that the terms defined in § 7701 ("corporation," "association," "partnership," etc.) are not ambiguous but "[have been] in common usage in Anglo American law for centuries" and, as a corollary, that "*Morrissey* provides a test of identification [that is itself] unambiguous." Hence, the argument goes, it is the "check-the-box" regulations that "render whole portions of the Internal

Revenue Code ambiguous" and are therefore "in direct conflict with the decision of the Supreme Court in *Morrissey*" in the absence of Congressional amendment to § 7701.

It is unnecessary, in our judgment, to engage in an exegesis of *Chevron* here. The perimeters of that opinion and its directive to courts to give deference to an agency's interpretation of statutes that the agency is entrusted to administer and to the rules that govern implementation, as long as they are reasonable, are clear, and are clearly applicable in this case. Moreover, the argument that *Morrissey* has somehow cemented the interpretation of § 7701 in the absence of subsequent Congressional action or Supreme Court modification is refuted by *Chevron*, in which the Court suggested that an agency's interpretation of a statute, as reflected in the regulations it promulgates, can and must be revised to meet changing circumstances. *See Chevron*, 467 U.S. at 863-64. Even more to the point, the Court in *Morrissey* observed that the Code's definition of a corporation was less than adequate and that, as a result, the IRS had the authority to supply rules of implementation that could later be changed to meet new situations. *See* 296 U.S. at 354-55. Finally, we note that our interpretation is buttressed by the opinion in *National Cable*, on which the plaintiff relies to support the proposition that the "check-the-box" regulations are impermissible in light of *Morrissey*. In that case, the Supreme Court noted that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference *only if* the prior court decision holds that its construction follows from the *unambiguous* terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable*, 545 U.S. at 982 (emphasis added).

In short, we agree with the district court's conclusions: that § 7701 is ambiguous when applied to recently emerging hybrid business entities such as the LLCs involved in this case; that the Treasury regulations developed to fill in the statutory gaps when dealing with such entities are eminently reasonable; that the "check-the-box" regulations are a valid exercise of the agency's authority in that respect; that the plaintiff's failure to make an election under the "check-the-box" provision dictates that his companies be treated as disregarded entities under those regulations, thereby preventing them from being taxed as corporations under the Internal Revenue Code; and that he is, therefore, liable individually for the employment taxes due and owing from those businesses because they constitute sole proprietorships under § 7701, and he is the proprietor.

## B. *Status Under State Law*

Citing *United States v. Galletti*, 541 U.S. 114 (2004), Littriello argues that the IRS must recognize the separate existence of his LLCs as a matter of state law. We conclude that the opinion is inapplicable here. *Galletti* involved a partnership, not a disregarded entity, that was assessed as an employer for unpaid employment taxes. *See id.* at 117. The partners, who were liable for partnership debts under state law, contended that they should therefore also be assessed as "employers," but the Court held as a matter of federal law that "nothing in the Code requires the IRS to duplicate its efforts by separately assessing the same tax against individuals or entities who are not the actual taxpayers but are, by reason of state law, liable for payment of the taxpayer's debt." *Id.* at 123. Hence, the Court in *Galletti* was concerned with a business actually organized as a partnership and not a disregarded entity deemed a sole proprietorship for federal tax purposes. Of course, partnerships are recognized entities under federal tax law and explicitly included in § 7701's definitions, while single-member LLCs are not. *See* I.R.C. § 7701(a)(2).

The same flaw prevents application of the ruling in *People Place Auto Hand Carwash, LLC v. Commissioner*, 126 T.C., 359 (2006), to the facts here. In this recent opinion, submitted as supplemental authority by Littriello, the Tax Court held that imposition of an employment tax on the LLC could not be viewed as equivalent to the imposition of an employment tax on its members. Again, however, the LLC in *People Place* had more than a single member and, because it had not opted to be treated as a corporation, it was perforce treated as a partnership. But under no circumstances could Littriello's single-member LLCs be treated as partnerships for federal tax

purposes – his choice was to elect treatment of each of them as a corporation or, in the absence of an election, have them treated as sole proprietorships.

The federal government has historically disregarded state classifications of businesses for some federal tax purposes. In *Hecht v. Malley*, 265 U.S. 144 (1924), for example, the United States Supreme Court held that Massachusetts trusts were "associations" within the meaning of the Internal Revenue Code despite the fact they were not so considered under state law. As courts have repeatedly observed, state laws of incorporation control various aspects of business relations; they may affect, but do not necessarily control, federal tax provisions. *See*, *e.g.*, *Morrissey*, 296 U.S. at 357-58 (explaining that common law definitions of certain corporate forms do not control interpretation of federal tax code). As a result, Littriello's single-member LLCs are entitled to whatever advantages state law may extend, but state law cannot abrogate his federal tax liability.

## C. *Proposed Amendments to the Regulations*

In October 2005, after the notice of appeal in this case had been filed, the IRS circulated a notice of proposed rule-making that set out possible amendments to the entity-classification regulations that would shelter individuals similarly situated to Littriello for unpaid employment taxes. The proposed amendments would treat "single-owner eligible entities that currently are disregarded as entities separate from their owners for federal tax purposes . . . as separate entities for employment tax and related reporting requirements." Disregarded Entities; Employment and Excise Taxes, 70 Fed. Reg. 60475 (proposed Oct. 18, 2005) (to be codified at 26 C.F.R. pts. 1.301). Thus, if the amendments had been in place when the tax deficiencies in this case arose, single-member LLCs such as Littriello's would be treated as separate entities for employment tax purposes, although not for other federal tax purposes.

Littriello argues that the proposed amendments should be taken as reflecting current Treasury Department policy and applied to his case. But, it appears that the changes contemplated by the amendments are intended to simplify employment tax collection procedures and do not represent an endorsement of the position that Littriello has advocated in this litigation. As the Supreme Court noted in *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833 (1986):

> It goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound. Indeed, it would be antithetical to the purposes of the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553, to tax an agency with "inconsistency" whenever it circulates a proposal that it has not firmly decided to put into effect and that it subsequently reconsiders in response to public comment.

*Id.* at 845. As the IRS urges, we conclude that "[b]ecause the further development of permissible alternatives is part of the administering agency's function under *Chevron*, the proposed regulations do not in any way undermine the District Court's determination that the current regulations are reasonable and valid." Plainly, an agency does not lose its entitlement to *Chevron* deference merely because it subsequently proposes a different approach in its regulations.[3]

## *CONCLUSION*

For the reasons set out above, we reject the plaintiff's challenge to the "check-the-box" regulations and AFFIRM the district court's grant of summary judgment to the defendant.

---

[3] As of the date of this opinion, the proposed regulations have not been adopted.