152 T.C. No. 14

UNITED STATES TAX COURT

DAF CHARTERS, LLC, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21317-14L.                    Filed May 9, 2019.


P is a Florida limited liability company that is wholly owned by a Cayman Islands corporation. As such and not electing otherwise, it is disregarded as an entity separate from its owner for most Federal tax purposes. See sec. 301.7701-2(c)(2)(i), Proced. & Admin. Regs. However, it is not disregarded as an entity separate from its owner and instead is treated as a corporation for Federal employment tax purposes. See id. subdiv. (iv)(A) and (B).

During the taxable period ending Dec. 31, 2012, P operated a charter yacht, registered in the Cayman Islands, that traveled in and out of the United States and its territorial waters, and P employed U.S. citizens as crewmen for the yacht. P filed a timely employment tax return for the period but did not pay employment taxes on the wages it paid to those employees, claiming that those wages were exempt from employment taxes under the "crewmen's exemption" of I.R.C. sec. 3121(b)(4) because P was not an "American employer" under I.R.C. sec. 3121(h). The definition of an "American employer", however, includes "a corporation organized under the

laws of the United States or of any State." I.R.C. sec. 3121(h)(5). R assessed the applicable amount of employment taxes and notified P that he intended to levy to collect the outstanding liability. In response P requested and received a collection due process hearing under I.R.C. sec. 6330, following which R upheld the proposed levy.

Held: Because P is treated as a corporation for employment tax purposes, sec. 301.7701-2(c)(2)(iv)(B), Proced. & Admin. Regs., and was organized under the laws of a State, P was an American employer under I.R.C. sec. 3121(h) and thus was not entitled to the crewmen's exemption of I.R.C. sec. 3121(b)(4). Hence, P is liable for employment taxes on wages paid during the taxable period ending Dec. 31, 2012, and R may proceed with the proposed collection action against P with respect to this liability.

Glen A. Stankee, for petitioner.

Brandon S. Cline and Kenneth A. Hochman, for respondent.

OPINION

ASHFORD, Judge: This collection due process (CDP) case brought under section 6330(d)(1)[1] is before the Court on cross-motions for summary judgment.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

As explained below, we will deny summary judgment for petitioner and grant respondent's cross-motion.

## Background

The facts set forth herein are not in dispute and are derived from the parties' pleadings, motion papers, and supporting materials attached to the motion papers. See Rule 121(b). At the time the petition was filed, petitioner's principal place of business was in Florida.

Petitioner is a limited liability company organized in the State of Florida whose sole member is a corporation, DAF Charters, Ltd., organized in the Cayman Islands. Petitioner was formed on August 15, 2011, at which time its sole member and manager was John Staluppi, a U.S. citizen. Mr. Staluppi transferred his membership interest to DAF Charters, Ltd., on May 8, 2012, but remains petitioner's manager.[2]

During the taxable period ending December 31, 2012 (period at issue), petitioner owned and operated a charter yacht, christened Diamonds Are Forever,

_____

[2]Petitioner filed an annual report with the Florida secretary of state on January 2, 2013, still listing Mr. Staluppi as its sole member and did not file an amended report listing DAF Charters, Ltd., as its sole member until July 10, 2013. Petitioner does not address this discrepancy, but the parties agree that Mr. Staluppi actually transferred his membership interest on May 8, 2012.

that traveled in and out of the United States and its territorial waters.[3] The yacht was registered in the Cayman Islands on January 5, 2012, before which it was registered in the United States. Petitioner employed crewmen for the yacht, all of whom were U.S. citizens.

Petitioner timely filed Form 941, Employer's Quarterly Federal Tax Return, for the period at issue, on which it claimed that the wages it paid to its crewmen were exempt from employment taxes.[4]

On March 18, 2013, the Internal Revenue Service (IRS) sent petitioner a Notice CP102 advising that changes had been made to its Form 941 for the period at issue because of a "miscalculation" on the form, resulting in tax due of $6,872 plus interest.[5] In response to this notice petitioner filed Form 941-X, Adjusted Employer's Quarterly Federal Tax Return or Claim for Refund, seeking abatement of the resulting assessment on the grounds that it was entitled to the "crewmen's

---

[3]Petitioner sold the yacht at some point in 2013.

[4]The Code (specifically, the Federal Insurance Contributions Act, secs. 3101-3128) imposes taxes on both employees and employers for wages received and paid, but employers collect and remit all of these taxes. See infra p. 12. We refer to these taxes collectively as "employment taxes" throughout this Opinion.

[5]The IRS immediately assessed this amount. The IRS is authorized to do this because the employment taxes at issue here, i.e., employment taxes imposed by subtitle C of the Code, are not subject to deficiency procedures under secs. 6211-6216. See sec. 6201.

exemption" of section 3121(b)(4), under which wages paid by a foreign employer to U.S. crewmen serving on a foreign vessel when the vessel is outside the United States are not subject to employment taxes. The IRS denied petitioner's abatement claim, and thereafter petitioner filed a protest with the IRS Office of Appeals (Appeals) requesting reconsideration.

On June 12, 2013, while petitioner's protest was pending, the IRS sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice advised petitioner that the IRS intended to levy to collect the outstanding liability for the period at issue. In response to the levy notice petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request). In its CDP hearing request petitioner did not indicate that it was seeking any collection alternatives; instead, as set forth in a document attached to its CDP hearing request, petitioner asserted that it was challenging the underlying liability on the grounds that it was entitled to the crewmen's exemption and noted that its protest of the denial of its abatement claim remained pending with Appeals. Petitioner requested that a CDP hearing be held with its authorized representative.

On February 26, 2014, Appeals held a telephone CDP hearing with petitioner's authorized representative. During the hearing petitioner's authorized

representative disputed petitioner's underlying tax liability for the period at issue, reiterating its legal argument that it was entitled to the crewmen's exemption. Petitioner's authorized representative also advised the Appeals settlement officer conducting the hearing that petitioner was not interested in seeking a collection alternative and that if it received an adverse ruling on its protest, it would prefer a promptly issued notice of determination for which it could seek review in this Court.

On July 21, 2014, the Appeals officer handling petitioner's protest emailed the Appeals settlement officer handling petitioner's CDP hearing request informing her that she was closing petitioner's case and sustaining the denial of petitioner's abatement claim on the basis that it did not qualify for the crewmen's exemption because petitioner, a single-member limited liability company organized under the laws of the State of Florida, was regarded as an entity and treated as a corporation for employment tax purposes and thus met the definition of "American employer" under section 3121(h).

On August 13, 2014, the Appeals settlement officer and petitioner's authorized representative spoke by telephone. The settlement officer informed him of Appeals' disposition of petitioner's protest and inquired whether petitioner wished to pursue any collection alternatives. Petitioner's authorized

representative reiterated that petitioner did not wish to pursue any collection alternatives and that a notice of determination should be issued for which petitioner could seek review in this Court.

The settlement officer determined that the proposed levy should be sustained, and on August 26, 2014, Appeals sent petitioner (with a copy to its authorized representative) a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to that effect (notice of determination). A summary detailing the matters considered by Appeals and its conclusions was attached to the notice of determination and included the following explanations:

### SUMMARY AND RECOMMENDATION

The Final Notice, Notice of Intent to Levy, was properly issued and proposed levy action is sustained because you were not interested in negotiating collection alternatives and disagree with the tax due. Your request for abatement of the tax assessment is denied.

*       *       *       *       *       *       *

### LEGAL AND ADMINISTRATIVE REVIEW

* * * [The settlement officer] verified the requirements of any applicable law or administrative procedure were met. * * *

*       *       *       *       *       *       *

## ISSUES YOU RAISED

**Collection Alternatives Requested**
You offered no alternatives to collection.

**Challenges to the Liability**
You disagree with your liability because you claim not to be an American employer subject to employment taxes. Your challenge to the existence or amount of the underlying liability was assigned to Appeals Office [sic] G. Rodrigo who determined you are liable for the employment tax. Regulation § 301.7701-2(c)(iv) treats single member Limited Liability Companies (SMLLCs) as corporations for all employment tax purposes. Section 3121(h) of the Code defines an "American Employer" to include a corporation organized under the laws of the United States or of any State. Section 3121(h) falls under the regulations to determine whether the employer is an American employer. You are a SMLLC created in the State of Florida; therefore, you are an American Employer under Section 3121(h)(5) and subject to employment taxes.

**You raised no other issues.**

## BALANCING ANALYSIS

Sustaining proposed levy action balances the need for efficient collection of tax with your concern that collection is no more intrusive because you would not consider collection alternatives and we have determined you are liable for the employment tax subject to these proceedings.

Petitioner timely filed a petition with this Court for review of the notice of determination.

## Discussion

### I. Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where the moving party shows, through "the pleadings * * * and any other acceptable materials, together with the affidavits or declarations, if any, * * * that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The parties agree on all material facts necessary to resolve the purely legal questions that this case presents. Consequently, this case is appropriate for summary adjudication.

Under section 6331(a), if any person liable to pay any tax neglects or refuses to do so after notice and demand, the Commissioner is authorized to collect the unpaid amount by way of a levy upon all property and rights to property belonging to such person or upon which there is a lien. Pursuant to section 6330(a), the Commissioner must provide the person with written notice of and an opportunity for an administrative hearing to review the proposed levy.

If an administrative hearing is requested in a levy case, the hearing is to be conducted by Appeals. Sec. 6330(b)(1). At the hearing the Appeals officer conducting it must obtain verification that the requirements of applicable law and administrative procedure have been met. Sec. 6330(c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed collection action including spousal defenses, challenges to the appropriateness of the proposed collection action, and collection alternatives. Sec. 6330(c)(2)(A). Following the hearing the Appeals officer must determine among other things whether the proposed collection action is appropriate. In reaching the determination the Appeals officer must take into consideration: (1) whether the requirements of applicable law and administrative procedure have been met, (2) all relevant issues raised by the taxpayer including offers of collection alternatives, and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary. Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by Appeals in a levy case. See also Callahan v. Commissioner, 130 T.C. 44, 48 (2008). If the taxpayer files a timely petition for such judicial review, the

applicable standard of review depends on whether the underlying tax liability is at issue. Where the taxpayer's underlying tax liability is properly at issue, the Court reviews the liability determination de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews administrative determinations made by Appeals regarding nonliability issues for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

A taxpayer may challenge his underlying tax liability during a CDP hearing (and thereafter in this Court) if he did not receive a notice of deficiency with respect to the liability or did not otherwise have an earlier opportunity to dispute the liability. See sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; see also Kuykendall v. Commissioner, 129 T.C. 77, 80 (2007); Sego v. Commissioner, 114 T.C. at 609; Shere v. Commissioner, T.C. Memo. 2008-8, slip op. at 10. Petitioner's underlying liability for the period at issue was not subject to the IRS' deficiency procedures, and it did not have a prior opportunity to challenge the liability.[6] Accordingly, to the extent the underlying

_____

[6]We note that petitioner's pending protest with Appeals did not preclude it from disputing its underlying liability for the period at issue in the concurrent CDP hearing (and accordingly, now in this Court). See Perkins v. Commissioner, 129 T.C. 58, 65-67 (2007).

liability is at issue, we will review Appeals' determination de novo; we will review Appeals' administrative determination sustaining the proposed levy for abuse of discretion.

II.     Challenge to Underlying Liability

This case presents a question of statutory interpretation (which is an issue of first impression in this Court), so we begin as we always must with the relevant statutory text.

A.     Employment Taxes

The Federal Insurance Contributions Act (FICA), codified in subtitle C of the Code, sections 3101-3128, imposes employment taxes (specifically, for "[o]ld-age, survivors, and disability insurance" and for "[h]ospital insurance") on all wages received by individuals with respect to employment and requires employers to collect and remit these amounts on their employees' behalf.  Secs. 3101(a) and (b), 3102(a).  FICA also imposes employment taxes (technically, as excise taxes) in equal amounts on all wages paid by employers with respect to employment. Sec. 3111(a) and (b).  Employers subject to these taxes report and pay them quarterly.  See sec. 31.6011(a)-1(a)(1), Employment Tax Regs.

The Code defines "employment" subject to these taxes as follows:

> SEC. 3121(b). Employment.-- For purposes of this chapter, the term "employment" means any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (ii) on or in connection with an American vessel or American aircraft under a contract of service which is entered into within the United States or during the performance of which and while the employee is employed on the vessel or aircraft it touches at a port in the United States, if the employee is employed on and in connection with such vessel or aircraft when outside the United States, or (B) outside the United States by a citizen or resident of the United States as an employee for an American employer (as defined in subsection (h)) * * *

However, section 3121(b)(4) specifically excepts from this definition

> service performed by an individual on or in connection with a vessel not an American vessel, or on or in connection with an aircraft not an American aircraft, if (A) the individual is employed on and in connection with such vessel or aircraft, when outside the United States and (B)(i) such individual is not a citizen of the United States or (ii) the employer is not an American employer.

This exception is known as the "crewmen's exemption".

The parties agree that during the period at issue (1) petitioner paid wages to its employees for services performed on or in connection with petitioner's vessel, (2) petitioner's vessel was not an American vessel,[7] (3) petitioner's employees

---

[7]The Code defines the term "American vessel" as follows:

> SEC. 3121(f). American Vessel and Aircraft.--For purposes of

(continued...)

were employed on and in connection with petitioner's vessel when it was outside the United States, and (4) petitioner's employees were citizens of the United States. The parties' sole dispute is whether petitioner was an "American employer" during the period at issue. If it was, then section 3121(b) applies and the section 3121(b)(4) crewmen's exemption does not, and petitioner is liable for employment taxes on all wages it paid to its employees, regardless of where services were performed. If it was not, then the section 3121(b)(4) crewmen's exemption does apply, and petitioner is not liable for employment taxes on any wages it paid to its employees, regardless of where services were performed.

The Code defines an "American employer" as an employer which is: "(1) the United States or any instrumentality thereof, (2) an individual who is a resident of the United States, (3) a partnership, if two-thirds or more of the partners are residents of the United States, (4) a trust, if all of the trustees are

[7](...continued)
this chapter, the term "American Vessel" means any vessel documented or numbered under the laws of the United States; and includes any vessel which is neither documented or numbered under the laws of the United States nor documented under the laws of any foreign country, if its crew is employed solely by one or more citizens or residents of the United States or corporations organized under the laws of the United States or of any State * * *

Because petitioner's vessel was registered under the laws of the Cayman Islands during the period at issue, it did not fall under this definition.

residents of the United States, or (5) a corporation organized under the laws of the United States or of any State." Sec. 3121(h); see also sec. 31.3121(h)-1, Employment Tax Regs. (reiterating statutory rule).[8] Neither section 3121 nor any other provision in subtitle C of the Code separately defines "corporation".

B. Entity Classification

Section 7701(a) provides that "[w]hen used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof * * * [t]he term 'corporation' includes associations, joint-stock companies, and insurance companies." Sec. 7701(a)(3). This definition is explicitly nonexclusive, however, pursuant to section 7701(c), which provides that "[t]he terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." See also McNamee v. Dep't of the Treasury, 488 F.3d 100, 106-107 (2d Cir. 2007) (noting that limited liability companies are not listed in section 7701).

---

[8]The Code does not separately define "employer" for purposes of employment taxes but does define it broadly for purposes of unemployment insurance payments, sec. 3306(a), and Federal income tax withholding responsibilities, sec. 3401(d), as any person who pays wages or otherwise engages individuals in employment. The Supreme Court has interpreted the term in the employment tax context similarly broadly. See Otte v. United States, 419 U.S. 43, 51 (1974). In any event neither party here disputes that petitioner was an employer for employment tax purposes, only whether it was an "American employer" for purposes of sec. 3121.

The Department of the Treasury has promulgated regulations under section 7701 that elaborate on the definitions of section 7701(a) to provide clear guidelines for classifying various forms of business entities. See T.D. 8697, 1997-1 C.B. 215; see also Littriello v. United States, 484 F.3d 372, 375-376 (6th Cir. 2007); Pierre v. Commissioner, 133 T.C. 24, 30-32 (2009) (discussing history of entity classification and earlier regulations), supplemented by T.C. Memo. 2010-106. Known as the "check-the-box" regulations, these regulations generally grant broad discretion to business owners, who can often elect (by "checking the box" for a certain entity type on a form filed with the IRS, hence the name) whether an entity through which they conduct business is treated as an association (i.e., a corporation), a partnership, or a "disregarded" entity for Federal tax purposes. Sec. 301.7701-3(a), Proced. & Admin. Regs.; see McNamee, 488 F.3d at 109 (upholding the check-the-box regulations as a valid exercise of the IRS' authority); Littriello, 484 F.3d at 378 (same); Med. Practice Sols., LLC v. Commissioner, 132 T.C. 125, 129-130 (2009) (same), aff'd without published opinion sub nom. Britton v. Shulman, 106 A.F.T.R.2d (RIA) 2010-6048 (1st Cir. 2010).

The check-the-box regulations do not always grant entity owners a choice, though, listing some types of entities (much more extensively than in section

7701(a)(3) itself) that are irrevocably considered corporations. See sec. 301.7701-2(b), Proced. & Admin. Regs. Entities not in this list may elect their treatment, and the regulations provide default options for entities that fail to choose. See sec. 301.7701-3(b), Proced. & Admin. Regs. In particular, a domestic entity that is not a corporation and has a single owner is disregarded as an entity separated from its owner unless the owner elects otherwise. See secs. 301.7701-2(c)(2)(i) and 301.7701-3(b)(1)(ii), Proced. & Admin. Regs. The regulations define an entity as domestic "if it is created or organized as any type of entity (including, but not limited to, a corporation, unincorporated association, general partnership, limited partnership, and limited liability company) in the United States, or under the law of the United States or of any State." Sec. 301.7701-5(a), Proced. & Admin. Regs.

The effect of being disregarded is that, in general, the entity is treated as a sole proprietorship or branch of its owner. See sec. 301.7701-2(a), Proced. & Admin. Regs. Although the entity may be recognized separately from its owner under State or other Federal law, any items of income and loss generated by the entity are directly attributable to and reported by the entity's owner for Federal tax purposes, and the entity is not subject to corporate income tax or any partnership or S corporation income allocation rules, all of which are codified under subtitle A of the Code.

However, the check-the-box regulations provide a specific exception for Federal employment tax purposes. Instead of attributing employment tax liability to a disregarded entity's owner, the regulations state that "paragraph (c)(2)(i) of this section (relating to certain wholly owned entities) does not apply to taxes imposed under Subtitle C--Employment Taxes and Collection of Income Tax" and that "an entity that is disregarded as an entity separate from its owner for any purpose under this section is treated as a corporation with respect to taxes imposed under Subtitle C--Employment Taxes and Collection of Income Tax". Sec. 301.7701-2(c)(2)(iv)(A) and (B), Proced. & Admin. Regs. In other words, a disregarded entity is treated as a separate entity for purposes of employment taxes imposed under subtitle C and, in addition, the separate entity is treated as a corporation for purposes of employment taxes imposed under subtitle C and related reporting requirements.

This exception was added to the check-the-box regulations in 2007, see T.D. 9356, 2007-2 C.B. 675, and section 301.7701-2(c)(2)(iv)(A), Proced. & Admin. Regs., is applicable to wages paid on or after January 1, 2009, and section 301.7701-2(c)(2)(iv)(B), Proced. & Admin. Regs., is applicable to wages paid on

or after September 14, 2009,[9] see sec. 301.7701-2(e)(5), Proced. & Admin. Regs. Before then, the owner of a disregarded entity was ultimately liable for employment taxes on wages paid by the entity but could choose whether the owner or the entity would be responsible for calculation, reporting, and payment of that liability. Notice 99-6, 1999-1 C.B. 321. The Department of the Treasury's

---

[9]On November 1, 2011, in order to extend the FICA and Federal Unemployment Tax Act exceptions for family members and religious sect members to certain entities that are disregarded as separate from their owners for Federal tax purposes under sec. 301.7701-2(c), Proced. & Admin. Regs., and to clarify the existing rule that the owner of a disregarded entity for Federal tax purposes under sec. 301.7701-2(c), Proced. & Admin. Regs., is subject to backup withholding (i.e., the withholding requirements imposed under sec. 3406), the Department of the Treasury amended, among other regulations, sec. 301.7701-2, Proced. & Admin. Regs. See T.D. 9554, 2011-50 I.R.B. 843. It revised (and made "[r]eserved") sec. 301.7701-2(c)(2)(iv)(A), Proced. & Admin. Regs., and added sec. 301.7701-2T(c)(2)(iv)(A), Temporary Proced. & Admin. Regs., 76 Fed. Reg. 67366 (Nov. 1, 2011). T.D. 9554, 2011-50 I.R.B. at 846. However, the first sentence of sec. 301.7701-2(c)(2)(iv)(A), Proced. & Admin. Regs., was retained in sec. 301.7701-2T(c)(2)(iv)(A), Temporary Proced. & Admin. Regs., supra. T.D. 9554, 2011-50 I.R.B. at 846. On July 14, 2014, the Department of the Treasury finalized the November 1, 2011, amendments without substantive change and retaining the 2009 applicability dates. T.D. 9670, 2014-29 I.R.B. 121. The preamble to these final regulations notes that

> [s]ection 301.7701-2(c)(2)(iv)(A) continues to provide that § 301.7701-2(c)(2)(i) (relating to certain wholly owned entities) does not apply to taxes imposed under Subtitle C. Section 301.7701-2(c)(2)(iv)(B) also continues to provide that an entity that is disregarded as an entity separate from its owner for any purpose under § 301.7701-2 is treated as a corporation for purposes of taxes imposed under Subtitle C. [Id. at 122.]

rulemaking eliminated this choice and eliminated a disregarded entity's owner's liability for employment taxes; now, the entity alone is liable. T.D. 9356, 2007-2 C.B. at 676.

C.    Analysis

Applying the check-the-box regulations to petitioner is relatively straightforward. As a limited liability company with a single owner that has not elected otherwise, petitioner is automatically disregarded as an entity separate from its owner for most Federal tax purposes. See sec. 301.7701-2(c)(2)(i), Proced. & Admin Regs. As a result, petitioner need not worry about Federal income tax, as any income or loss it generates from its operations is attributed to its owner. However, for employment tax purposes, this default classification does not apply, id. subdiv. (iv)(A); petitioner must determine the extent of its potential liability for employment taxes under FICA, separately resolving any issues of entity classification that may arise under the applicable provisions.

Petitioner contends that it is not liable for employment taxes for the period at issue. Its contention hinges on whether it is an "American employer" as defined in section 3121(h), and in particular whether it is an employer which is a "corporation organized under the laws of the United States or of any State." See supra pp. 14-15. If petitioner is a "corporation" for purposes of section

3121(h)(5), then it is an American employer and section 3121(b) applies and the section 3121(b)(4) crewmen's exemption does not.

Because neither section 3121 nor any other provision in subtitle C of the Code gives a specific definition of "corporation", we refer to the definition provided in section 7701 (which, see supra p. 15, applies throughout the Code when not specifically preempted) and, importantly, its elaboration in the regulations promulgated under that section, i.e., the check-the-box regulations. In this regard the check-the-box regulations explicitly provide that petitioner, notwithstanding it being a disregarded entity under section 301.7701-2(c)(2)(i), Proced. & Admin. Regs., is treated as a corporation with respect to employment taxes.[10] Sec. 301.7701-2(c)(2)(iv)(B), Proced. & Admin. Regs. It is undisputed

---

[10]We find additional support for our analysis in that it gives specific effect to both subdivisions A and B of sec. 301.7701-2(c)(2)(iv), Proced. & Admin. Regs., even though they could be easily read as redundant. Under our interpretation, subdivision A assures that a disregarded entity, informed that its disregarded status does not apply for employment taxes, will at least undertake an initial inquiry under FICA to determine if it has any liability, while subdivision B provides that if, during this inquiry, the entity faces a question of classification (such as under sec. 3121(h)), it will know that it is unequivocally a corporation for such purposes. For example, a disregarded entity that engages only self-employed independent contractors for its services would need only to consider subdivision A to reach the determination that it is not liable for employment taxes, whereas the situation in this case would be significantly more difficult to resolve in the absence of subdivision B; although petitioner would not be disregarded from its owner for employment tax purposes, the regulations would not provide any

(continued...)

that petitioner was organized under the laws of the State of Florida. Therefore, petitioner was an American employer under section 3121(h) for the period at issue and as such, it is subject to section 3121(b) and the section 3121(b)(4) crewmen's exemption does not apply.[11]

Petitioner contends that section 3121(h) does not depend directly on an entity's classification under the check-the-box regulations but instead first imposes its own test based on the residence(s) of the entity's owner(s). Because petitioner's sole owner during the period at issue was a foreign corporation,

---

[10](...continued)
specific guidance as to its actual classification for purposes of sec. 3121(h), and we would resort to the common law and other considerations. Cf. Pierre v. Commissioner, 133 T.C. 24, 35 (2009), supplemented by T.C. Memo. 2010-106.

[11]Reaching this result through regulatory manipulation of a statutory definition so that a word used in different parts of the Code has different meanings is admittedly awkward but hardly unprecedented. In interpreting the Code we have routinely held that the same word used in different contexts may have different meanings so as to best effect the intentions of the legislative and regulatory drafters, see, e.g., Estate of Nienhuys v. Commissioner, 17 T.C. 1149, 1161 (1952); Oman v. Commissioner, T.C. Memo. 2010-276, slip op. at 23 (citing Conforte v. Commissioner, 692 F.2d 587, 591 (9th Cir. 1982), aff'g in part, rev'g in part and remanding 74 T.C. 1160 (1980)), and we find that our interpretation inarguably does so in this case. Such situations are precisely the reason why the Department of the Treasury added sec. 301.7701-2(c)(2)(iv), Proced. & Admin. Regs., to the check-the-box regulations; because there would be no question as to whether petitioner is liable for employment taxes if it were actually a corporation, the regulations treat it as a corporation so as not to allow it to avoid paying employment taxes solely through its disregarded entity status.

petitioner contends that it thus could not logically have been an "American employer". Petitioner draws support for this interpretation from section 3121(h)(3) and (4), which applies such residence tests to partnerships and trusts. But this argument only draws attention to these tests' distinction from section 3121(h)(5), which looks instead only at the jurisdiction in which a corporation is organized, without regard to its owner(s). While the plain text of the statute alone is sufficient to reach this conclusion, we also find good reasons for drawing such a distinction; almost all entities that the Code and regulations treat as corporations (or that elect to be treated as corporations) are specifically organized under the laws of some jurisdiction, but partnerships and trusts can exist at common law or simply in fact as an ongoing enterprise with multiple interested parties and no explicit legal form. See sec. 301.7701-1(a)(2), Proced. & Admin. Regs. As a result it is reasonable to presume that Congress determined that for section 3121(h) the most relevant and accurate basis on which to judge a corporation is its legal nexus, while for partnerships and trusts it is their owners' residential nexuses.

Petitioner further argues that declining to read a residence test into section 3121(h)(5) leads to illogical results, suggesting that it would not have been an American employer if it were owned half by a U.S. resident (say, Mr. Staluppi)

and half by a foreign entity (say, DAF Charters, Ltd.) because under the check-the-box regulations it would be treated as a partnership, yet under our reading it was an American employer despite being fully foreign owned. Petitioner similarly notes a reversal of its situation (i.e., if it were a foreign disregarded entity wholly owned by a domestic corporation, then it would not have been an American employer) and how this possibility provides an opportunity for domestic corporations in its line of business to avoid employment tax liability. While these may or may not be accurate interpretations of the law, they simply are not the situation that we face in this case. Petitioner is entitled to choose the entity form in which it conducts business, and the check-the-box regulations give it broad latitude in doing so. Petitioner presumably had good reasons for choosing the form that it did, but now it must live with the tax consequences even if it can envision better possibilities in retrospect. Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974); Selfe v. United States, 778 F.2d 769, 773 (11th Cir. 1985).

Petitioner also notes that there are certain exceptions under which entities that are disregarded under the check-the-box regulations remain disregarded for certain employment tax purposes (for example, an individual owner of a disregarded entity is instead treated as self-employed, sec. 301.7701-

2T(c)(2)(iv)(C)(2), Temporary Proced. & Admin. Regs., 81 Fed. Reg. 26694 (May 4, 2016); see also sec. 301.7701-2T(c)(2)(iv)(A), 76 Fed. Reg. 67366 (Nov. 1, 2011),[12] and an owner of a disregarded entity that qualifies for the family employment or religious faith exemptions from FICA is also exempt from employment taxes, secs. 31.3121(b)(3)-1(d), 31.3127-1(b), Employment Tax Regs.).[13] But petitioner does not coherently indicate how these exceptions apply to this case. Instead, they actually buttress respondent's position; because petitioner cannot identify an exception in the check-the-box regulations that applies specifically to its situation or for purposes of section 3121(h), the main rule of section 301.7701-2(c)(2)(iv)(B), Proced. & Admin. Regs., applies,

---

[12]In its motion papers petitioner cites sec. 301.7701-2(c)(2)(iv)(C)(2), Proced. & Admin. Regs., but this section is "[r]eserved" in the check-the-box regulations and refers to sec. 301.7701-2T(c)(2)(iv)(C)(2), Temporary Proced. & Admin. Regs., 81 Fed. Reg. 26694 (May 4, 2016), "[f]or further guidance".

[13]Petitioner also notes that an owner of a disregarded entity that qualifies for the exemption from Federal income tax under sec. 501(c)(3) is also exempt from Federal unemployment insurance payments, citing the Department of the Treasury's explanation of the 2007 regulations. See T.D. 9356, 2007-2 C.B. 675, 676 (citing sec. 3306(c)(8)). Notably though, that explanation also explicitly states that such a disregarded entity is not exempt from employment taxes, which is only logical, since organizations that are exempt from Federal income tax under sec. 501 are not themselves exempt from employment taxes on wages over $100 per year paid to any employee. See sec. 3121(a)(16). Petitioner, as a for-profit enterprise, fails to clearly indicate how this somehow affects its employment tax liability.

classifying petitioner as a corporation for employment tax purposes, including the application of section 3121(h).

Finally, petitioner suggests that because section 301.7701-2(c)(2)(iv), Proced. & Admin. Regs., did not exist when Congress enacted section 3121(h) in its current form as part of the 1954 Code, ch. 736, sec. 3121(h), 68A Stat. at 425, we should use the same meaning of "corporation" as in the 1954 version of section 3121(h); in petitioner's view Congress "was clearly referring to an entity that is regarded as a corporation for income tax purposes", which it is not.  This argument hardly needs addressing; if Congress wanted the term "corporation" in section 3121(h) to have a static meaning, Congress would have said so.

Because petitioner is treated as a corporation for employment tax purposes and was organized under the laws of the State of Florida, we hold that it was an American employer under section 3121(h)(5), section 3121(b) applies, and the section 3121(b)(4) crewmen's exemption does not.  Petitioner is therefore liable for employment taxes on all wages it paid to its employees during the period at issue.

III.    Challenge to Appropriateness of Proposed Levy

As indicated supra p. 10, in determining whether to sustain a proposed levy, Appeals must take into consideration:  (1) whether the requirements of applicable

law and administrative procedure have been met, (2) all issues raised by the taxpayer, including offers of collection alternatives, and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that collection be no more intrusive than necessary. Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. at 184. Under the abuse of discretion standard, the Court examines whether an Appeals determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); see also Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. We do not conduct an independent review or substitute our own judgment for that of the Appeals officer. Murphy v. Commissioner, 125 T.C. at 320. If the Appeals officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Thompson v. Commissioner, 140 T.C. 173, 179 (2013); Link v. Commissioner, T.C. Memo. 2013-53, at *12.

Petitioner's petition failed to raise any issues other than its underlying liability for the period at issue. Therefore, any issues pertaining to Appeals' administrative determination are deemed conceded. See Rule 331(b)(4). In any event, petitioner's authorized representative indicated on several occasions to the

Appeals settlement officer that petitioner did not wish to pursue any collection alternatives. It is not an abuse of discretion for an Appeals officer to sustain a collection action and not consider collection alternatives when the taxpayer has proposed none. See McLaine v. Commissioner, 138 T.C. 228, 243 (2012); Kendricks v. Commissioner, 124 T.C. 69, 79 (2005); see also sec. 301.7122-1(d)(1), Proced. & Admin. Regs. (requiring that offers to compromise a tax liability must be made in writing and contain all the information prescribed or requested by the IRS). Additionally, the record establishes that the Appeals settlement officer verified that all legal and procedural requirements had been met, see CreditGuard of Am., Inc. v. Commissioner, 149 T.C. 370, 379 (2017), and determined that the proposed levy appropriately balances the need for the efficient collection of taxes with petitioner's legitimate concern that the action be no more intrusive than necessary. Thus, it is apparent that the Appeals settlement officer committed no abuse of discretion in sustaining the proposed levy.

IV.    Conclusion

Petitioner has not given us a sufficient basis to deny summary adjudication in respondent's favor and to grant summary adjudication in its favor pursuant to Rule 121. Accordingly, we will deny petitioner's motion and grant respondent's cross-motion.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.